NATIONAL UNION FIRE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, INC., Appellant, *v.* RENO'S EXECUTIVE AIR, INC., a Corporation, Respondent.

No. 14693

June 26, 1984                      682 P.2d 1380

[Rehearing denied September 11, 1984]

*LeRoy Arrascada,* Reno, *Kern & Wooley,* Los Angeles, California, for Appellant.

*Stanley H. Brown, Sr., Stanley H. Brown, Jr.,* Reno, for Respondent.

361

## OPINION

*Per Curiam:*

This appeal arises from a dispute over the coverage provided by an aviation liability policy. The district court determined

that the provision on which the insurer relied to exclude coverage did not apply to a passenger's camera equipment, and ordered the insurer to pay to the insured the sum for which the latter had become liable as a result of damage to the camera equipment. We affirm the district court's judgment.

Respondent Reno's Executive Air is an air taxi operator subject to the provisions of the Federal Aviation Act. In May of 1977 respondent obtained an aviation liability policy from appellant National Union Fire Insurance Company. The policy covered liability for bodily injury as well as for property damage. Coverage for property damage extended to $500,000 per occurrence. Respondent was to pay an annual premium of $7,315.

Exclusion 5 of the policy provided: "This policy does not apply . . . to property damage to property owned, occupied, rented or used by the Insured or in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control or transported by the Insured." Attached to the policy and incorporated into it was Endorsement 3, which provided in part:

> . . . such coverage as is afforded for Property Damage Liability hereunder shall apply to all sums which the Insured shall be obligated to pay because of damage to or destruction of cargo which is the property of others and which is being transported in the aircraft insured hereunder . . .
>
> The limit of the Company's Liability shall be $1,000 per occurrence subject to a deductible of $100 per occurrence.
> . . .
> THIS ENDORSEMENT DOES NOT APPLY TO:
> . . .
> (b) Damage to or destruction of the baggage of any traveler or passenger in the insured aircraft. "Baggage" as used herein shall mean handbags, suitcases, valises, briefcases and other forms of baggage usually carried by transits and travelers and the contents thereof.

In June of 1977, Endorsement 10 was added to the policy. Endorsement 10 consisted of Civil Aeronautics Board Form 262 (rev. 6-70), the Standard Air Taxi Endorsement. Pursuant to the Federal Aviation Act, the Civil Aeronautics Board has adopted the Economic Regulations, 14 C.F.R. Part 298, with which air taxi operators such as respondent are required to comply. Subpart E of the Economic Regulations sets forth the minimum liability insurance an air taxi operator must carry. § 298.44 provides that unless individually approved by the

Board, an insurance policy required by Part 298 may not contain any exclusions other than the ones authorized by the section. The Standard Air Taxi Endorsement amends the policy to which it is attached to ensure the air taxi operator's compliance with Part 298. Paragraph 5 of the endorsement deletes the exclusions of the policy to which the endorsement is attached and replaces them with the exclusions authorized by Part 298. Exclusion 5(e), which replaces Exclusion 5 of the original policy, states:

> Unless otherwise provided in the policy of insurance, the liability insurance afforded under this policy shall not apply to:
>
> . . .
>
> Loss of or damage to property owned, rented, occupied or used by, or in the care, custody or control of the Named Insured, or carried in or on any aircraft with respect to which the insurance afforded by this policy applies.

In January of 1978, San Francisco television station KPIX chartered a helicopter operated by respondent to film a railroad near Portola, California. On board the aircraft was a KPIX cameraman carrying camera equipment valued at around $41,000. The aircraft collided with some power lines and crashed. Neither the pilot nor the cameraman was hurt, but the camera equipment was seriously damaged.

The owner of the camera equipment, Westinghouse Broadcasting, filed an action in federal court against respondent, seeking to recover the value of the camera equipment. Appellant defended the action on behalf of respondent subject to a reservation of rights. Ultimately, Westinghouse Broadcasting obtained a judgment of $41,000 against respondent. Respondent filed the instant action, seeking a declaration that the policy provided coverage for the damage to the camera equipment. Appellant maintained that Exclusion 5(e) excluded coverage for the damage, because the camera equipment was "in the care, custody or control" of respondent and further was "carried in or on" the aircraft. The district court determined that Exclusion 5(e) was ambiguous because it did not specify in whose possession the property being carried in or on the aircraft had to be. Construing the exclusion against appellant insurer, the court held that it did not apply to the camera equipment. The court granted summary judgment for respondent, and ordered appellant to pay respondent $41,000, the amount of Westinghouse Broadcasting's judgment against respondent. This appeal followed.

In determining the meaning of an insurance policy, the language should be examined from the viewpoint of one not trained in law or in the insurance business; the terms should be understood in their plain, ordinary and popular sense. Home Indemnity Co. v. Desert Palace, Inc., 86 Nev. 234, 236, 468 P.2d 19, 21 (1970); Sparks v. Republic Nat. Life Ins. Co., 647 P.2d 1127, 1132 (Ariz. 1982). In particular, an insurer wishing to restrict the coverage of a policy should employ language which clearly and distinctly communicates to the insured the nature of the limitation. Harvey's Wagon Wheel v. MacSween, 96 Nev. 215, 220, 606 P.2d 1095, 1098 (1980); Sparks v. Republic Nat. Life Ins. Co., 647 P.2d at 1133. We agree with the district court that Exclusion 5(e) is susceptible to more than one reasonable interpretation. The provision excludes from coverage property that is "owned, rented, occupied, or used" by the Named Insured, or "in the care, custody or control" of the Named Insured; however, it does not specify in whose possession property "carried in or on [the] aircraft" must be before the exclusion applies.[1]

Furthermore, although an individual clause standing alone might appear to contain no ambiguity, the policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions. Sparks v. Republic Nat. Life Ins. Co., 647 P.2d at 1134. A court must look to the entire contract of insurance for a true understanding of what risks are assumed by the insurer and what risks are excluded. Scott v. Keever, 512 P.2d 346 (Kan. 1973). Our reading of the insurance policy leads us to conclude that it fails to communicate the nature of the exclusion urged by appellant.

At the very beginning the policy provides that the Insurer shall pay on behalf of the Insured sums that the Insured shall become legally obligated to pay as damages because of damage to property. Paragraph 1 of Endorsement 10 also states that the Insurer agrees to pay sums which the Named Insured shall become legally obligated to pay as damages for damage to property of others. A layman reading this language and keeping in mind the purpose for which he purchased the policy would expect coverage for damage to the property of his passengers. Only upon reading the exclusions would the insured

---

[1]This particular problem was not present with the original Exclusion 5, which excluded coverage for property "transported by the Insured." The policy defines "Insured" as including not only the Named Insured but also any person using or riding in the aircraft with the express permission of the Named Insured.

become aware of the language—ambiguous in itself—on which the insurer relies to exclude coverage. The situation is further complicated by the existence of Endorsement 3, which provides coverage of up to $1,000 for cargo but not for baggage. Endorsement 3 is itself far from clear. For instance, the camera equipment involved here does not fall easily under either the dictionary definition of "cargo" or the definition of "baggage" set out in the policy.

Any ambiguity or uncertainty in an insurance policy must be resolved against the insurer and in favor of the insured. Harvey's Wagon Wheel, Inc. v. MacSween, 96 Nev. at 219-220, 606 P.2d at 1098 (1980). The contract will be given a construction which will fairly achieve its object of providing indemnity for the loss to which the insurance relates. Reserve Ins. Co. v. Pisciotta, 640 P.2d 764, 768 (Cal. 1982). While clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer. *Id.;* Harvey's Wagon Wheel, Inc. v. MacSween, *supra.*

The rationale for this rule of construction is that the insurer has drafted the policy and should be held responsible for its language. We recognize that appellant did not draft Exclusion 5(e), or indeed any of the language in the Standard Air Taxi Endorsement. However, appellant drafted the policy to which the endorsement attached. Appellant had the opportunity to clarify any ambiguities in the endorsement elsewhere in the policy. Although appellant had to use the statutorily mandated language if it wished to restrict the coverage of the policy, nothing prevented it from putting the insured on notice that little or no coverage was provided for liability arising from damage to property of passengers.

When ambiguity in the language of a policy exists, the court should consider not merely the language, but also the intent of the parties, the subject matter of the policy, and circumstances surrounding its issuance. Bonner County v. Panhandle Rodeo Ass'n, Inc., 620 P.2d 1102, 1106 (Idaho 1980). The policy should be construed to effectuate the reasonable expectations of the insured. Reserve Ins. Co. v. Pisciotta, *supra; see* Sullivan v. Dairyland Insurance Co., 98 Nev. 364, 649 P.2d 1357 (1982). A purchaser of an aviation liability policy which covers property damage reasonably expects that the policy will cover that property which is most likely to be damaged and to be the

subject of claims against the insured: the property of others carried on board the aircraft. When a policy has been issued which purportedly provides coverage but whose exclusionary provisions as interpreted by the insurer would narrow the coverage to defeat the purpose of the insurance, the policy must be construed against the insurer. *See* Bonner County v. Panhandle Rodeo Ass'n, Inc., *supra*. Such an exclusion must be stated clearly and unambiguously so as to readily communicate to the insured the specific circumstances under which he or she will not receive the expected coverage.

Keeping these principles in mind, we agree with the district court that the language of Exclusion 5(e) should be construed to exclude from coverage only property "carried in or on" the aircraft by the Named Insured. The camera equipment was not carried in or on the aircraft by respondent; nor was it in respondent's care, custody, or control. *See* Home Indemnity Company v. Desert Palace, 86 Nev. 234, 468 P.2d 19 (1970). Consequently, we hold that the exclusion did not apply to the camera equipment and that the policy provided full coverage for the damages for which respondent was liable to Westinghouse Broadcasting. We affirm the judgment of the district court.