FOURTH STREET PLACE, LLC, a Nevada Limited Liability Company, Appellant, *v.* THE TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation, Respondent.

No. 54415

December 29, 2011                               270 P.3d 1235

[Rehearing denied March 30, 2012]
[En banc reconsideration denied May 23, 2012]

*The Cobeaga Law Firm* and *J. Mitchell Cobeaga*, Las Vegas; *Deaner, Malan, Larsen & Ciulla* and *Brent Larsen*, Las Vegas, for Appellant.

*Snell & Wilmer, LLP*, and *Amy Samberg*, Las Vegas, for Respondent.

Before DOUGLAS, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal, we review a district court summary judgment in favor of the insurer in an insurance coverage action. We conclude that the policy at issue does not provide coverage because the damage sustained did not result from a covered cause of loss. Further, while we adopt the doctrine of efficient proximate cause, we conclude that it does not apply in this case. Therefore, we affirm.

### FACTS AND PROCEDURAL HISTORY

Appellant Fourth Street Place, LLC, owns an office building (the Building) located in Las Vegas, Nevada, and leases profes-

sional office space to various tenants. Fourth Street purchased an "all-risks" insurance policy (the Policy) for the Building from respondent The Travelers Indemnity Company for the period of March 19, 2004, to March 19, 2005. An "all-risks" policy covers any and all risks except those explicitly limited or excluded by the terms of the policy. The Policy provided, in pertinent part, provisions as to "Covered Causes of Loss," limitations regarding rain damage, and exclusions pertaining to faulty workmanship.

Fourth Street hired a general contractor to supervise the repair and renovation of the Building in November 2004. The general contractor subcontracted with Above It All Roofing to repair the roof. On Saturday, November 20, 2004, Above It All removed the waterproof membrane on the roof of the Building and prepared to replace the membrane the following week. That evening, Las Vegas received substantial rainfall that continued through the weekend. On Sunday, November 21, 2004, Above It All returned to cover the exposed portions of the roof with tarps to protect the Building, but wind later blew away the tarps, leaving the Building exposed to the rain.[1] The Building suffered significant water damage to the ceilings, drywall, doors, windows, cabinetry, electrical and HVAC systems, carpeting, and other flooring. A majority of the Building's tenants immediately vacated because the Building was uninhabitable.

The Monday after the storm, Fourth Street submitted an oral notice of claim to Travelers about the rain damage to the Building. Travelers inspected the Building and corresponded with several individuals from Fourth Street about the damage. On December 14, 2004, Travelers sent a letter to Fourth Street denying its claim after concluding that the damage to the Building did not result from a covered cause of loss. Thereafter, Fourth Street petitioned Travelers by letter to reconsider its denial of coverage. Travelers agreed to reconsider and referred the matter to its in-house coverage counsel. On March 15, 2005, Travelers reaffirmed by letter that it was denying coverage.

Seeking damages and declaratory relief, Fourth Street sued Travelers, among others, based on allegations that Travelers breached the insurance policy and denied coverage in bad faith. Travelers filed a motion for summary judgment, arguing that the damage to the Building did not result from a "Covered Cause of Loss." Travelers noted that the Policy specifically precluded coverage for

---

[1]Fourth Street and Above It All claim to have put the tarps on the roof on Sunday, November 21, 2004. On Monday morning, none of the tarps could be found or verified. The district court never made a finding of fact on this issue. For summary judgment purposes, however, the parties stipulated that the issue of the Policy's construction could be resolved as a matter of law.

damage resulting from rain unless the Building's roof or walls were first damaged by wind or hail. Travelers argued that because the Building's roof or walls were not damaged by wind or hail before it sustained rain damage, there was no coverage for damage to the Building, its contents, or resulting lost business income as a matter of law. Additionally, Travelers argued that because its denial of coverage was reasonable and there was no knowledge or reckless disregard of the lack of a reasonable basis for denying coverage, it was also entitled to summary judgment on the issue of bad faith.

Fourth Street opposed the motion and filed a countermotion for partial summary judgment on the issue of its entitlement to coverage. Fourth Street argued that the rain limitation should not preclude coverage because the tarps that Above It All used to temporarily cover the Building should be considered part of the roof; thus, when the wind blew away the tarps, the Building sustained actual damage to its roof by wind. Fourth Street also asked the court to apply the doctrine of efficient proximate cause, a rule that applies to find coverage if the "efficient proximate cause" of the damage at issue is a covered cause of loss under the Policy, even if an excluded cause of loss is a more immediate cause in the chain of causation. It argued that the efficient proximate cause of loss was Above It All's failure to prevent rain from entering the Building while it renovated the roof, which, Fourth Street contended, was a covered cause of loss under the Policy. Fourth Street also preemptively argued that the Policy's "faulty workmanship" exclusion should not apply because the term "workmanship" is ambiguous and, therefore, should be construed in its favor to only mean a flawed product.

Travelers responded by arguing that the doctrine of efficient proximate cause only applies when there are multiple causes of loss and at least one is a covered cause of loss; however, Travelers contends that is not the case here because Above It All's failure to properly cover the exposed portions of the roof was not a covered cause of loss; it was excluded by the "faulty workmanship" exclusion.[2] It additionally argued that the Policy made it clear that lost business income is covered only after there has been covered damage to insured property that results in a covered cause of loss.

After hearing oral argument, the district court entered its findings of fact, conclusions of law, and judgment granting Travelers' motion for summary judgment and denying Fourth Street's countermotion. It concluded that the Policy unambiguously excluded

---

[2]We note that at the time the district court considered the motion, while the doctrine of efficient proximate cause was recognized in the majority of jurisdictions, it had not been adopted in Nevada.

from coverage the damage sustained to the Building. Specifically, it found: (1) the rain damage did not result from a "Covered Cause of Loss" because the Building did not first sustain actual damage to its roof or walls by wind or hail, as required by the Policy for coverage of damage caused by rain; (2) Fourth Street's lost business income was not covered because it required a covered cause of loss, and there was none; (3) the "faulty workmanship" exclusion excluded coverage unless the faulty workmanship resulted in a covered cause of loss, and there was none; (4) the doctrine of efficient proximate cause did not apply because neither cause of loss—Above It All's faulty workmanship and the rain—was a covered cause of loss; and (5) Travelers did not deny Fourth Street's claim in bad faith.

Fourth Street filed a motion to amend both the findings of fact and the judgment. The district court granted the motion to amend the findings of fact[3] and denied the motion to amend the judgment. Fourth Street timely filed this appeal.

## DISCUSSION

This court reviews de novo a district court summary judgment and construction of a contract, without deference to the findings of the lower court. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005); *Farmers Ins. Exch. v. Neal*, 119 Nev. 62, 64, 64 P.3d 472, 473 (2003). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Continental Ins. Co. v. Murphy*, 120 Nev. 506, 508, 96 P.3d 747, 749 (2004). An issue of material fact is genuine when the evidence is such that a rational jury could return a verdict in favor of the nonmoving party. *Wood*, 121 Nev. at 731, 121 P.3d at 1031.

On appeal, Fourth Street argues that the damage it sustained was caused by Above It All's failure to prevent rain from entering the Building while it renovated the roof. It contends that (1) the Policy's rain limitation did not apply because (a) temporary devices such as tarps are part of a building or structure; thus, when the wind blew away the tarps, the Building sustained actual damage to its roof by wind; and/or (b) the Policy provides coverage for repairs to the Building, and that this creates an exception to the rain lim-

---

[3]The amended findings of fact clarified the following: the roof was being repaired not replaced, Fourth Street did not have time to file a formal claim or proof of loss before Travelers denied coverage, and Fourth Street also sought coverage for incidental costs.

itation; (2) the Policy's exclusion for "faulty workmanship" did not exclude work that was currently in progress; and (3) even if the rain limitation applied, Above It All's failure to prevent rain from entering the Building—which Fourth Street argues was a covered cause of loss—was the efficient proximate cause of the damage, thus, all of its losses were caused by a covered cause of loss.[4]

To determine whether the district court was correct in finding that the Policy excluded coverage for the damage sustained by Fourth Street, we must (1) determine if the cause of the damage was a covered cause of loss or if it was explicitly limited or excluded by the Policy, and (2) consider the adoption and applicability of the doctrine of efficient proximate cause in Nevada.

## Coverage under the Policy

To determine if the damage to the Building resulted from a covered cause of loss, we look to the language of the Policy. An insurance policy should "be read as a whole," and its "language should be analyzed from the perspective of one untrained in law or in the insurance business. Policy terms should be viewed in their plain, ordinary and popular connotations." *Am. Excess Ins. Co. v. MGM*, 102 Nev. 601, 604, 729 P.2d 1352, 1354 (1986). If a term in an insurance policy is ambiguous, it will be construed against the insurer, because the insurer was the drafter of the policy. *Powell v. Liberty Mutual Fire Ins. Co.*, 127 Nev. 156, 162, 252 P.3d 668, 672 (2011). Whether a term is ambiguous depends "'on whether it creates reasonable expectations of coverage as drafted.'" *Id.* (quoting *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 684, 99 P.3d 1153, 1157 (2004)). Thus, "a court should interpret an insurance policy to 'effectuate the reasonable expectations of the insured.'" *Id.* (quoting *National Union Fire Ins. v. Reno's Exec. Air*, 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984)). To determine whether a term is ambiguous, it should not be viewed standing alone, but rather in conjunction with the policy as a whole "in order to give a reasonable and harmonious

---

[4]Fourth Street also argues that the Policy provides coverage for lost business income whether or not there is a covered cause of loss. We disagree. The Policy specifies that a covered cause of loss is a prerequisite for lost business income coverage. Having determined that there is no covered cause of loss and that the doctrine of efficient proximate cause does not apply, we conclude that the district court did not err when it concluded that the Policy did not provide coverage for lost business income and that summary judgment was properly granted on this issue.

Fourth Street also asserted a bad faith claim against Travelers. However, having concluded that the district court did not err in finding that the Policy excluded coverage for the damage sustained to the Building, we need not reach the issue of bad faith.

meaning and effect to all its provisions." *National Union Fire*, 100 Nev. at 364, 682 P.2d at 1383.

The section of the Policy entitled "Coverage" provides, "We will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." The Policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss falls within the "Limitations" or "Exclusions" sections of the Policy.

We conclude that the Policy at issue does not provide coverage because the damage sustained by Fourth Street did not result from a covered cause of loss. Specifically, (1) the "Limitations" section of the Policy precludes coverage because the Building's roof did not sustain damage by wind before it was damaged by rain, and (2) the "Exclusions" section of the Policy precludes coverage for damage because Above It All's failure to prevent damage during the roof repair process is excluded by the "faulty workmanship" provision.

*Limitations*

The "Limitations" section of the Policy states:

a. We will not pay for loss of or damage to:

(1) The "interior of any building or structure" or to personal property in the building or structure, caused by rain, snow, sleet or ice whether driven by wind or not, unless:

(a) *The building or structure first sustains actual damage to the roof* or walls *by wind* or hail . . . .

(Emphases added.)

Fourth Street argues that this "rain limitation" does not preclude coverage under the facts of this case. It contends that temporary devices such as tarps are part of a building or structure; thus, when the wind blew away the tarps, the Building sustained actual damage to its roof by wind, and the rain limitation does not apply.[5] Fourth Street alternately asserts that the Policy provides

---

[5]Fourth Street bases this argument on the New Jersey Superior Court Appellate Division's interpretation of similar policy language. *Victory Peach Group, Inc. v. Greater New York Mutual Insurance Co.*, 707 A.2d 1383 (N.J. Super. Ct. App. Div. 1998). In *Victory Peach*, a building owner nailed tarps down to protect the building's interior from rain damage while the roof was being repaired. *Id.* at 1384. Subsequently, wind blew the tarps off of the roof and rain entered the building, damaging the building's interior and its contents. *Id.* The court rejected the insurer's argument that the rain limitation in the policy excluded the damages from coverage because the damage was not to the roof itself, but to the temporary covering. *Id.* at 1386. However, *Victory Peach* is distinguishable because the policy in that case included specific coverage for incomplete repairs ("'[a]dditions under construction, alterations and repairs'"), *id.* at 1384, which the Policy at issue here does not contain.

coverage for repairs to the Building, and that this creates an exception to the rain limitation. Travelers counters that caselaw in Nevada holds that permanent devices, not temporary devices, constitute part of a building or structure. *See Ace Prop. & Cas. Ins. Co. v. Vegas VP*, No. 2:07-CV-00421-BES-PAL, 2008 WL 2001760 (D. Nev. May 7, 2008), *aff'd*, 349 Fed. Appx. 232 (9th Cir. 2009).

> *Whether the Building first sustained actual damage to its roof*

To address Fourth Street's argument that the Policy's rain limitation does not apply because the Building sustained wind damage to its roof before it was damaged by rain, we must first determine the definition of "roof" in the absence of any controlling Nevada caselaw or a specific definition in the Policy. "Roof" is defined as "the external upper covering of a house or other building." *Webster's New Universal Unabridged Dictionary* 1670 (1996). However, this definition does not address whether a temporary covering such as a tarp constitutes a roof.

The Oregon Supreme Court recently addressed a similar permanent/temporary dispute in *Dewsnup v. Farmers Insurance Co.*, 239 P.3d 493 (Or. 2010). In *Dewsnup*, the insured homeowner removed from the roof wood shingles that were in need of repair, leaving the plywood sublayer. *Id.* at 494. During the repair, the insured replaced the shingles with a layer of polyethylene plastic that was secured to the wood sublayer with a system of staples, roof tacks, and wooden bats. *Id.* According to expert testimony, the plastic was sufficient to protect the home for one to two years under normal circumstances if necessary. *Id.* However, winds tore the plastic off of the roof and rain entered the home through joints in the plywood sublayer. *Id.* at 494-95. The insurance company denied coverage under a rain limitation similar to the limitation in the Policy at issue in this appeal. *Id.* at 495-96. Because the policy did not define "roof" explicitly, the parties contested whether the temporary plastic covering constituted a roof. *Id.* at 496-97. Rejecting the insurer's contention that a roof must be permanent, the Oregon Supreme Court adopted a functional definition of roof, stating that "a roof should be sufficiently durable to meet its intended purpose: to cover and protect a building against weather-related risks that reasonably may be anticipated." *Id.* at 499.

We find the definition of "roof" set forth in *Dewsnup* helpful in resolving this matter. Here, Above It All removed the waterproof membrane of the roof, intending to replace it the following week. However, unlike the insured in *Dewsnup*, who replaced his permanent roof with a temporary protective covering during repairs, Above It All failed to replace the waterproof membrane with any-

thing. Only *after* it began to rain did Above It All return to cover the exposed portions of the roof with tarps; however, significant damage had already occurred. Because it is undisputed that the tarps were placed over the Building only after the rain began, we cannot find that they were planned as a replacement for the waterproof membrane, sufficiently durable to protect the Building from reasonably anticipated weather-related risks.

We therefore conclude that the tarps used to cover the areas of the Building's roof exposed by removal of the waterproof membrane did not constitute a "roof" for purposes of the Policy's rain limitation. Even if we were to conclude that the tarps comprised a roof, the roof did not sustain wind damage *before* the interior rain damage occurred.

> *Whether repairs and alterations were covered in the Policy*

To address Fourth Street's argument that the Policy covers repairs and alterations, providing an exception to the rain limitation, we must again look to the language of the Policy. As we interpret an insurance policy as a whole, *Am. Excess Ins. Co. v. MGM*, 102 Nev. at 604, 729 P.2d at 1354, we apply the rule of *noscitur a sociis*, which instructs us to ascertain the meaning of terms in the Policy by referencing the terms with which they are associated. *See Orr Ditch Co. v. Dist. Ct.*, 64 Nev. 138, 146, 178 P.2d 558, 562 (1947).

The Policy at issue includes alterations, repairs, and "[m]aterials . . . and temporary structures . . . used for making . . . repairs to the building or structure" within its "Covered Property" section. However, the other items listed in this section are complete or whole items such as "[c]ompleted additions," "[f]ixtures," and "[p]ermanently attached . . . [e]quipment," not unfinished items or items that are currently under construction or repair. Viewed in context with its surrounding terms, the inclusion of "[a]lterations and repairs to the building or structure" within the same section as complete or whole items indicates that repairs and alterations to the Building only gain Policy coverage once they are complete. Moreover, even if incomplete repairs were covered by the Policy, this would not provide an exception to the requirement that the Building first sustain actual damage to its roof or walls by wind or hail before Fourth Street may recover for interior damage caused by rain.

Accordingly, we conclude that the district court did not err when it determined that the rain limitation applied and the damage to the Building caused by the rain did not result from a covered cause of loss.

However, in light of Fourth Street's argument that the efficient proximate cause of the damage was Above It All's failure to prevent rain damage, we must also determine whether Above It All's faulty workmanship was a covered cause of loss.

### Exclusions

The "Exclusions" section of the Policy at issue states that Travelers will not pay for loss or damage caused by or resulting from faulty workmanship, unless that faulty workmanship results in a covered cause of loss. The term "workmanship" is not defined in the Policy.

Fourth Street argues that this faulty workmanship exclusion is ambiguous because it could be interpreted to encompass either damage caused by or resulting from a flawed product or damage caused by or resulting from a flawed process, or both. Because Fourth Street contends that the damage sustained by the Building resulted from Above It All's failure to adequately cover the exposed portions of the roof (a flawed process), Fourth Street urges that this ambiguity must be resolved in its favor to only exclude from coverage damages caused by or resulting from a flawed finished product. We disagree.

Fourth Street relies on *Allstate Ins. Co. v. Smith*, 929 F.2d 447 (9th Cir. 1991), wherein the Ninth Circuit Court of Appeals interpreted a similarly worded faulty workmanship provision. The *Allstate* court found this provision ambiguous because it was susceptible to at least two different interpretations: to include a flawed product or a flawed process. *Id.* at 449. As such, the court interpreted the "faulty workmanship" exclusion in a light most favorable to the insured, and concluded that the exclusion only applied to damage resulting from a flawed product. *Id.* at 450.

Initially, we note that the *Allstate* court did not analyze the faulty workmanship exclusion in context and that a policy's meaning should be interpreted according to its particular circumstances. *Id.* at 450. However, to the extent that *Allstate* stands for the proposition that a policy term may only have one meaning, we disagree.

### *"Workmanship" is susceptible to two meanings*

"Workmanship" is defined as *both* "the quality or mode of execution, as of a thing made" (a process) and "the product or result of labor and skill; work executed" (a product). *Webster's New Universal Unabridged Dictionary* 2189 (1996). Thus, the plain and ordinary meaning of the term "workmanship" encompasses the quality of the process utilized to achieve the finished product and the quality of the finished product itself. Standing alone, the term "workmanship" is susceptible to either the product or process meaning, or both.

Within the context of an insurance policy, workmanship has been interpreted by other courts to mean a product, a process, or both. *See Allstate*, 929 F.2d at 450 (interpreting "faulty workmanship" to mean a flawed product); *Kroll Constr. Co. v. Great Am. Ins. Co.*, 594 F. Supp. 304, 307-08 (N.D. Ga. 1984) (interpreting "faulty workmanship" to mean a flawed process and noting this was its "plain, ordinary meaning" and the insured's attempt to find that term ambiguous so as to justify a liberal construction in its favor was a "strain"); *Schultz v. Erie Ins. Group*, 754 N.E.2d 971, 976-77 (Ind. Ct. App. 2001) (rejecting *Allstate*'s analysis and interpreting "faulty workmanship" to mean either a flawed product or a flawed process). We conclude that the language of the Policy at issue indicates that "workmanship" refers to both products and processes.

### *The term "workmanship" includes both products and processes*

Because an insurance policy must be interpreted in its entirety, the meaning of terms within an insurance policy should be ascertained by reference to the terms with which they are associated. *See Am. Excess Ins. Co.*, 102 Nev. at 604, 729 P.2d at 1354; *Orr Ditch Co.*, 64 Nev. at 146, 178 P.2d at 562. Thus, the "faulty workmanship" exclusion at issue here must be interpreted within the context of the Policy as a whole and by reference to its surrounding terms. Here, the "faulty workmanship" term appears within a subsection of the Policy that lists items which are both processes, *e.g.*, "[p]lanning," and products, *e.g.*, "[m]aterials used in repair." This indicates that the insurer intended this subsection to exclude from coverage damage caused by both a flawed process and a flawed product. Further, the term "workmanship" appears in the Policy's exclusion clause between the words "[p]lanning" and "[m]aintenance," which indicates that it is intended to refer to part of the building process. *See Schultz*, 754 N.E.2d at 976-77 ("Read in context, 'workmanship,' falling between planning and maintenance, at the very least signifies a component of the building process leading up to a finished product.")

Additionally, if we were to interpret "workmanship" to only refer to a product, this would render another clause included within this same subsection meaningless. *Cf. Allstate*, 929 F.2d at 450 (justifying its interpretation of similar terminology in an insurance policy by noting that the alternative would cause other language within the policy to be "seemingly rendered meaningless"). This same "Exclusions" section also provides that the Policy does not cover loss or damage resulting from "Faulty, inadequate, or defective . . . (3) Materials used in repair, construction, renovation

or remodeling." If we were to interpret "faulty workmanship" only to refer to a flawed product, it would not be necessary to have a separate clause in the Policy to exclude faulty materials, because any loss or damage caused by or resulting from faulty, inadequate, or defective materials would necessarily be included within any loss or damage caused by or resulting from the faulty, inadequate, or defective final product.

We conclude that when the Policy at issue is read as a whole, the term "workmanship" is not ambiguous, but rather, it is a broad term because it refers to both a process and a finished product and that the Policy's "faulty workmanship" exclusion excludes from coverage damage caused by both a faulty process and a faulty finished product. The term "workmanship" standing alone may be ambiguous; however, when read in conjunction with its surrounding terms, we find that ascribing both a process and a product definition to "workmanship" best effectuates the reasonable expectations of the insured. Interpreting this exclusion in this manner is also in harmony with the concept of an all-risk policy. Generally, all-risk policies insure risks that are not normally contemplated and provide recovery for losses of a fortuitous nature. *See Victory Peach Group, Inc. v. Greater New York Mutual Insurance Co.*, 707 A.2d 1383, 1385 & n.1 (N.J. Super. Ct. App. Div. 1998) (defining fortuitous losses as those that are dependent upon chance). Construction and remodeling are contemplated and planned; thus any losses resulting from them are not of the type that are generally covered by all-risk policies. Therefore, we conclude that the district court did not err when it determined that the workmanship exclusion was not ambiguous.

We further conclude that Above It All's faulty workmanship did not result in a covered cause of loss. The result of Above It All exposing portions of the Building's roof during repairs and then leaving for the night without covering the exposed portions was that the Building sustained rainwater damage. As previously discussed, because the Building did not "first sustain[ ] actual damage to the roof . . . by wind or hail," the rain that caused this damage was not a covered cause of loss under the Policy.

Thus, we conclude that notwithstanding the Policy's rain limitation, which excludes from coverage the damage caused by rain, the damages sustained by the Building are also excluded from coverage based on Above It All's faulty workmanship in repairing the roof.

*The doctrine of efficient proximate cause*

Fourth Street asks this court to reverse the district court's summary judgment based on the adoption of efficient proximate cause, which has not yet been adopted in Nevada. It contends that Above

It All's alleged failure to properly cover the partially repaired roof set in motion the chain of events that ultimately damaged the Building. Fourth Street argues that even if the rain limitation applies, Above It All's failure to take adequate protective measures was the efficient proximate cause of the damage; therefore, the damage it sustained resulted from a covered cause of loss.[6]

The doctrine of efficient proximate cause developed in California and has been adopted by a majority of jurisdictions. *Pioneer Chlor Alkali v. National Union Fire Ins. Co.*, 863 F. Supp. 1226, 1230 (D. Nev. 1994). Although this court has not yet adopted the doctrine of efficient proximate cause, the Nevada federal district court has addressed it. *Id.* at 1230-32. Under the doctrine of efficient proximate cause, where covered and noncovered perils contribute to a loss, the peril that set in motion the chain of events leading to the loss or the "predominating cause" is deemed the efficient proximate cause or legal cause of loss. *Id.* Generally, this determination is left to the trier of fact, but when the facts are settled or undisputed, the determination is for the court as a matter of law. *Id.* at 1231-32. The court then evaluates the coverage of an insurance policy based on the determined efficient proximate cause of the loss. *Id.* at 1230.

Here, however, neither cause of loss (the rain and Above It All's faulty workmanship) is a covered cause of loss. Because having both a covered and noncovered cause of loss is a prerequisite to applying the doctrine of efficient proximate cause, the doctrine provides no relief here. Therefore, the district court did not err in concluding that the doctrine of efficient proximate cause did not apply in this case.

Even though we have found that the doctrine of efficient proximate cause will not provide relief under the facts of this case, we take this opportunity to join with the majority of jurisdictions and

---

[6]In support of its position that applying the efficient proximate cause doctrine would result in a determination that its water damage resulted from a covered cause of loss, Fourth Street relies on a line of cases that have concluded that insureds' losses were covered despite their policies' rain limitations when the proximate cause of each of their losses was faulty workmanship, which was *not* excluded by their policies. *See Allstate*, 929 F.2d at 450-51; *Tento Intern., Inc. v. State Farm Fire and Cas.*, 222 F.3d 660, 663-64 (9th Cir. 2000); *Century Theaters, Inc. v. Travelers Property Cas. Co. of America*, No. C-05-3146 JCS, 2006 WL 708667, at *7-9 (N.D. Cal. March 20, 2006). However, these cases are distinguishable because, as discussed previously, we have determined that Above It All's faulty workmanship is not a covered cause of loss under *this* Policy.

adopt the doctrine of efficient proximate cause in Nevada. We agree with the reasoning set forth by our sister state of California in our adoption of this doctrine. The Supreme Court of California explained that this doctrine prevents the absurd result that would occur if coverage was denied "even though an insured peril 'proximately' caused the loss simply because a subsequent, excepted peril was also part of the chain of causation." *Garvey v. State Farm Fire and Cas. Co.*, 770 P.2d 704, 707 (Cal. 1989).

Accordingly, we affirm the district court's summary judgment.

HARDESTY and PARRAGUIRRE, JJ., concur.