**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| OLIN CORPORATION and PIONEER AMERICAS LLC d/b/a OLIN CHLOR ALKALI PRODUCTS,<br><br>          Plaintiffs-Appellees,<br><br>   v.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>          Defendant-Appellant. | No. 14-15017<br><br>D.C. Nos. 2:10-cv-00623-GMN-NJK and 2:10-cv-01298-GMN-NJK<br><br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted February 11, 2016
San Francisco, California

Before: SCHROEDER and NGUYEN, Circuit Judges, and ADELMAN,** District
Judge.

Olin Corporation and its affiliate, Pioneer Americas LLC (collectively, "Olin"),

operate a plant in Henderson, Nevada, that produces industrial chemicals. Continental

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\*      The Honorable Lynn S. Adelman, District Judge for the U.S. District
Court for the Eastern District of Wisconsin, sitting by designation.

Casualty Company issued an insurance policy covering the plant's boilers and machinery. In late 2008, a series of incidents caused damage to the machinery. Continental denied coverage for damage relating to Olin's diaphragm cells, which are tanks containing, among other things, metal cathodes covered by asbestos diaphragms. Continental argued that the damage to the cells was not covered because it was not caused by an "accident" within the meaning of the policy. At summary judgment, the district court determined that part of the policy was ambiguous and identified other issues of fact for the jury. The jury returned a verdict in favor of Olin. The district court entered judgment for Olin based on the verdict and a partial settlement agreement in which the parties stipulated to the amount of damages. Continental appeals. It argues that the district court's interpretation of the policy was incorrect as a matter of Nevada law and that it is entitled to judgment as a matter of law. In the alternative, Continental argues that it is entitled to a new trial because the court's instructions to the jury, which were based on its erroneous interpretations of the policy, were likewise erroneous. Continental also argues that the district court abused its discretion in excluding certain evidence under Federal Rule of Evidence 407. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The first issue Continental raises pertains to the "efficient proximate cause" doctrine. Under this doctrine, where covered and noncovered perils contribute to a

loss, the peril that set in motion the chain of events leading to the loss or the "predominating cause" is deemed the efficient proximate cause or legal cause of loss. *See Fourth St. Place, LLC v. Travelers Indem. Co.*, 270 P.3d 1235, 1243 (Nev. 2012).

Continental contends that, for two reasons, the district court erred by applying this doctrine to this case. First, Continental argues that the doctrine is limited to "all risk" policies and does not apply to specified-perils policies such as Continental's boiler-and-machinery policy. However, we can find no support in Nevada law (or the law of other jurisdictions) for this argument. Nor can we identify any reason why the doctrine would be limited to all-risk policies. Accordingly, we conclude that the efficient proximate cause doctrine is not limited to all-risk policies.

Second, Continental contends that because its policy covers only "direct damage" to covered property caused by a covered cause of loss, the policy language precludes use of the efficient proximate cause doctrine. Continental contends that this policy language means that coverage exists only when a covered peril is the last link in the causal chain that terminates in the damage, and not when a covered peril only sets in motion the chain of events leading to the loss. However, Continental does not cite any cases holding that a covered peril causes "direct damage" only when it is the last link in the causal chain that terminates in the damage. And we conclude that the use of "direct damage" in the policy is consistent with the efficient proximate cause doctrine.

3

2. Continental next contends that the district court erred in determining that the word "corrosion" in the policy is ambiguous as applied to the facts of this case. An insurance policy is ambiguous if "it creates multiple reasonable expectations of coverage as drafted." *Century Sur. Co. v. Casino West, Inc.*, 329 P.3d 614, 616 (Nev. 2014) (alteration omitted). "A seemingly clear policy can be rendered ambiguous when applying the policy to the facts leads to multiple reasonable interpretations." *Id.*

In this case, the issue is whether the term "corrosion" includes the penetration of magnetite dendrites into asbestos diaphragms that are baked onto metal cathodes inside the cells. We conclude that the district court correctly determined that whether this process was "corrosion" is ambiguous. The policy does not define "corrosion." Moreover, the asbestos diaphragms did not themselves corrode. Rather, the metal cathodes corroded, and byproducts of this corrosion (i.e., the magnetite dendrites) penetrated the diaphragms, causing them damage. On the one hand, it would be reasonable to understand the policy as meaning that the damage to the diaphragms was "corrosion" because the damage was caused by a corrosion byproduct. On the other hand, it would be reasonable to understand the policy as meaning that the damage to the diaphragms was not "corrosion" because the diaphragms did not themselves corrode. Thus, the word "corrosion" as applied to this case leads to multiple reasonable interpretations, and the district court correctly determined that the term is ambiguous.

4

3. The remaining issue is whether district court committed prejudicial error when it excluded evidence of Olin's having changed its policy governing the use of sodium bisulfite during emergency system shutdowns in 2010, two years after the incidents that gave rise to this suit. We will reverse a district court's evidentiary ruling only if the court abused its discretion and the error was prejudicial. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). The court may affirm a district court's evidentiary ruling on any grounds supported by the record. *United States v. Orm Hieng*, 679 F.3d 1131, 1141 (9th Cir. 2012).

The district court excluded evidence of the policy change on the ground that it was evidence of a subsequent remedial measure. *See* Fed. R. Evid. 407. Continental argues that it did not seek to introduce evidence of the policy change to prove Olin's negligence or for any other of the other prohibited reasons in Rule 407. Rather, it sought to introduce the evidence to impeach the testimony of Continental's expert witnesses. We agree with Continental that if this was the purpose of introducing the evidence, the evidence would not have been inadmissible under Rule 407. *See* Fed. R. Evid. 407 ("the court may admit [evidence of a subsequent remedial measure] for another purpose, such as impeachment"). However, we conclude the evidence had no impeachment value. Although one expert during his testimony mentioned the original policy, the fact that Olin later changed the policy would not have undercut his testimony. The expert testified that adding sodium bisulfite during the emergency

5

shutdown would have made no difference because the magnetite would have "already formed" before the bisulfite had taken effect. 5 E.R. 523–24 (testifying that adding sodium bisulfite "wasn't going to do anything except provide additional satisfaction that, well, if you had it you did it. But it was not effective."). The fact that Olin later changed its policy to make the addition of sodium bisulfite mandatory during emergency shutdowns does not imply that adding it in 2008 would have prevented the magnetite damage. Accordingly, we conclude that the district court did not abuse its discretion in excluding evidence of this fact.

AFFIRMED.