ANDREW P. GORDON, UNITED STATES DISTRICT JUDGE
This is a dispute over whether an insurance policy covers a theft scheme run by several employees of plaintiff CP Food & Beverage, Inc. (CP). CP ran a club where patrons could buy "funny money" to tip waitresses or pay topless dancers. The waitresses and dancers could turn the funny money back into CP for cash. Certain CP employees overcharged customers' credit cards through various methods, including charging the credit card multiple times for the same bill, charging for bottles of alcohol that the employees kept for themselves, and charging for funny money that the customer never purchased and then cashing in the funny money with CP.
The scheme was uncovered after multiple customers complained to the police and disputed the charges with their credit card companies. CP paid chargebacks to the customers' credit cards in a total amount of $768,617.91, both in response to its contractual requirements with the credit card companies and also as part of an agreement with law enforcement. CP also incurred hundreds of thousands of dollars in professional fees to investigate and resolve issues with law enforcement and defrauded customers. However, if a customer did not dispute a charge or if the customer's dispute was not sustained, CP did not pay a chargeback.
During the course of the scheme, CP was covered by a commercial crime policy issued by defendant United States Fire Insurance Company (U.S. Fire). The policy covered "loss of or damage to 'money', 'securities' and 'other property' resulting directly from 'theft' committed by an 'employee', whether identified or not, acting alone or in collusion with other persons." ECF No. 26-6 at 4. The policy defines theft (which includes forgery) as "the unlawful taking of property to the deprivation of the Insured." Id. at 4, 15. Property covered by the policy is limited to property that CP owns or leases or that CP "hold[s] for others whether or not [CP is] legally liable for the loss of such property ...." Id. at 11. The policy does not cover a loss "that is an indirect result of an 'occurrence' covered by this policy including, but not limited to, loss resulting from ... (3) Payment of costs, fees or other expenses you incur in establishing the existence or the amount of loss under this policy." Id. at 6.
CP submitted a claim to U.S. Fire to recover the credit card chargebacks and professional fees, but U.S. Fire denied the claim. CP filed suit in this court against U.S. Fire, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, violations of the Unfair Claims Practices Act, and declaratory relief.
U.S. Fire moves for summary judgment on all claims, arguing the policy does not *1175 cover the employees' thefts because CP was not a direct victim of the theft. U.S. Fire contends CP instead is seeking to recover for its liability to the customers, which is not a covered loss. As for the bad faith claim, U.S. Fire contends it at least had a reasonable basis for denying CP's claim, and thus it did not act in bad faith as a matter of law. U.S. Fire also contends that CP has not identified any damages it suffered as a result of either the alleged bad faith or unfair practices.
CP responds that because the employees exchanged the funny money for cash from CP and because CP had to reimburse the customers for credit card charges, the employees stole from CP and the loss is covered under the policy. CP argues that it will be able to show bad faith because U.S. Fire did not investigate the claim and never asserted CP was not a direct victim of the theft until the present motion.[1] It also contends that it will be able to show U.S. Fire engaged in unfair claims practices. Finally, CP argues that it has shown damages based on the chargebacks and professional fees incurred in investigating the claim.
I. ANALYSIS
Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Fairbank v. Wunderman Cato Johnson , 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. James River Ins. Co. v. Hebert Schenk, P.C. , 523 F.3d 915, 920 (9th Cir. 2008).
A. Breach of Contract
The parties dispute whether the theft scheme is a covered loss under the policy. U.S. Fire contends it is not because the scheme stole money from the customers, not CP, and CP was returning that stolen property through credit card chargebacks as a form of restitution or disgorgement. U.S. Fire argues the policy requires the loss to CP be directly caused by the employee theft, and it was not here because the employees stole from the customers and then used the stolen funds to buy alcohol or funny money from CP. CP responds that because the employees obtained cash from CP using the funny money, they stole from CP so the loss is covered.
Courts addressing similar policy language about a loss resulting directly from an employee's theft have fallen into two camps. Some courts view the policy language as equivalent to a proximate cause analysis. See *1176 Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co. , 693 F.3d 665, 675 (6th Cir. 2012) (collecting cases). Others employ the "direct means direct" rule, meaning that the employer's property must be stolen (or a third party's property where the employer acts as bailee or trustee), and the employer's third-party liability to a defrauded customer is not covered. See id. at 673, 676 (interpreting direct loss policy language to mean the loss results "immediately and without any intervening space, time, agency, or instrumentality" from the employee's theft); Vons Cos., Inc. v. Fed. Ins. Co. , 212 F.3d 489, 492-93 (9th Cir. 2000) (applying California law and stating that " 'direct' means 'direct' and ... in the absence of a third party claims clause, Vons's policy did not provide indemnity for vicarious liability for tortious acts of its employee").[2]
"When interpreting state law, [I am] bound by the decision of the highest state court." In re Kekauoha-Alisa , 674 F.3d 1083, 1087 (9th Cir. 2012). The Supreme Court of Nevada has not yet addressed with which of these two camps it would side. "Absent a controlling state court decision," I must "predict how the highest state court would decide the issue." Id. at 1087-88.
"An insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." Farmers Ins. Exch. v. Neal , 119 Nev. 62, 64 P.3d 472, 473 (2003). To determine whether a loss is covered, I look to the policy's language. Fourth St. Place v. Travelers Indem. Co. , 127 Nev. 957, 270 P.3d 1235, 1239 (2011), as modified on reh'g (May 23, 2012). I must read the policy as a whole and "from the perspective of one untrained in law or in the insurance business." Id. (quotation omitted). I give policy terms "their plain, ordinary and popular connotations." Id. (quotation omitted).
I will not rewrite unambiguous provisions or increase the insurer's obligation to the insured that the parties intentionally and unambiguously limited. United Nat'l Ins. Co. v. Frontier Ins. Co. , 120 Nev. 678, 99 P.3d 1153, 1157 (2004) (en banc). However, if a term in an insurance policy is ambiguous, I construe it against the insurer as the drafter of the policy. Fourth St. Place , 270 P.3d at 1239. A term is ambiguous if it "creates reasonable expectations of coverage as drafted." Id. (quotation omitted). Thus, I "interpret an insurance policy to effectuate the reasonable expectations of the insured." Id. (quotation omitted).
In determining whether a term is ambiguous, I do not view it "standing alone, but rather in conjunction with the policy as a whole ... to give a reasonable and harmonious meaning and effect to all its provisions." Id. (quotation omitted). I "look to the entire contract of insurance for a true understanding of what risks are assumed by the insurer and what risks are excluded." Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc. , 100 Nev. 360, 682 P.2d 1380, 1383 (1984). I must give every word of the policy effect if possible and avoid rendering any of its provisions meaningless. Bielar v. Washoe Health Sys., Inc. , 129 Nev. 459, 306 P.3d 360, 364 (2013).
I predict Nevada would follow the "direct means direct" rule and hold the policy language at issue does not cover *1177 third party claims or investigation costs. Starting with the policy's plain language, it covers loss resulting "directly" from an employee's theft. ECF No. 26-6 at 4. If proximate cause were sufficient, that would render the word "directly" superfluous. Additionally, the policy defines theft as "the unlawful taking of property to the deprivation of the Insured." Id. at 4, 15. The property covered by the policy is limited to property that CP owns or leases or that it holds for others. Id. at 11. The policy thus contemplates a loss when the insured is deprived of property (either its own or property it holds as trustee or bailee), not when a third party is deprived of property and the third party later sues the insured or requires repayment under a contractual provision. This is consistent with the reasonable expectations of the insured because this is not a policy designed to cover CP for liability to third parties for its vicarious liability due to its employees' theft of its customers' property. See Vons Cos., Inc. , 212 F.3d at 491 ("Under the insuring clauses, Vons is covered only for direct losses to Vons caused by its employee's dishonesty, not for vicarious liability for losses suffered by others arising from its employee's tortious conduct.").[3]
Given the policy language and keeping in mind the purpose for which CP purchased this policy, CP would not expect coverage for the chargebacks or the investigation costs. The employees stole customers' money through unauthorized charges to the customers' credit cards. The employees then used that stolen money to purchase alcohol and funny money from CP. But the theft was of the customers' (or perhaps the credit card companies') funds, not CP's. CP admits that it would not be liable for a chargeback unless the customer disputed the charge. CP also admits that it paid the chargebacks as part of its contractual arrangement with the credit card companies and due to an agreement with law enforcement. CP's loss thus "was contingent on the occurrence of a series of events that were not inevitable, ... were not immediate or readily ascertainable at the time of" its employees' thefts, and if the customers never discovered the fraudulent charges or chose not to dispute them, CP "would not have suffered the loss it now claims." Direct Mortg. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA , 625 F.Supp.2d 1171, 1177-78 (D. Utah 2008). Its losses therefore did not "directly" result from the thefts.
Likewise, CP's investigative costs did not directly result from the employees' theft. Instead, they resulted from CP attempting to investigate the thefts, to assure law enforcement that the owners were not involved in the scheme, and to support CP's insurance claim. I therefore *1178 grant U.S. Fire's motion for summary judgment on the breach of contract and declaratory judgment claims.
B. Bad Faith
To establish a claim for bad faith based on a denial of payment on all or part of a claim, a plaintiff must establish that (1) the insurer denied the claim, (2) the denial was unreasonable, and (3) the insurer knew it lacked a reasonable basis to deny the claim, or acted with reckless disregard as to the unreasonableness of the denial. See Schumacher v. State Farm Fire & Cas. Co. , 467 F.Supp.2d 1090, 1095 (D. Nev. 2006) ; Pemberton v. Farmers Ins. Exch. , 109 Nev. 789, 858 P.2d 380, 382 (1993) ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy."). "The key to a bad faith claim is whether or not denial of the coverage was reasonable." Sherwin v. Infinity Auto Ins. Co. , No. 2:11-cv-00043-APG-GWF, 2013 WL 5918312, at *3 (D. Nev. Oct. 31, 2013), aff'd , 639 Fed.Appx. 466 (9th Cir. 2016) (quotation omitted). Consequently, if the insurer had a reasonable basis for its decision, there can be no finding of bad faith as a matter of law. Id.
Because U.S. Fire properly denied coverage, it did not act in bad faith in denying the claim. Moreover, even if my prediction that Nevada would adopt the "direct means direct" rule is incorrect, U.S. Fire at least had a reasonable basis for its decision to deny coverage. U.S. Fire therefore is entitled to judgment as a matter of law on the bad faith claim.
C. Unfair Claims Practices
Nevada Revised Statutes § 686A.020 provides that an insurer "shall not engage in this state in any practice which is ... an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." The statute lists identified acts which are declared to be unfair practices in settling insurance claims. See id. § 686A.310(1). An "insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act [identified in § 686A.310(1) ] as an unfair practice." Id. § 686A.310(2).
CP has not pointed to evidence raising a genuine dispute that it sustained damages as a result of an unfair practice. The only evidence of damages CP cites to is its own answers to interrogatories. ECF No. 26-12 at 7-8. However, that damages calculation lists chargebacks and professional fees. CP does not explain how any particular unfair claims practice resulted in chargebacks or professional fees. In those same interrogatories, CP was asked to state the amount of damages it incurred as a result of the alleged unfair practices. Id. at 10. CP responded that it was "in the process of calculating the exact amount of damages incurred as the result of Defendant's violations of the Nevada Unfair Claims Practices Act and evaluating whether an expert may be needed to assist in that task. As discovery is ongoing, [CP] will supplement its Answer to this Interrogatory." Id. There is no evidence CP updated this discovery response. CP thus has not pointed to evidence raising a genuine dispute as to damages on the unfair practices claim. Moreover, in its opposition, CP does not point to any evidence supporting the other elements of this claim. I therefore grant summary judgment in U.S. Fire's favor on the unfair practices claim.
II. CONCLUSION
IT IS THEREFORE ORDERED that defendant United States Fire Insurance Company's motion for summary judgment (ECF No. 26) is GRANTED. The clerk of court is instructed to enter judgment in favor of defendant United States Fire Insurance *1179 Company and against plaintiff CP Food & Beverage, Inc.

This is incorrect. U.S. Fire sent a letter denying coverage on October 26, 2016, in which it stated that the thefts were not covered because the employees took money from customers, not from CP, and that CP did not suffer a loss directly from a theft. ECF No. 26-13 at 8-9.

See also Universal Mortg. Corp. v. Württembergische Versicherung AG , 651 F.3d 759, 761-62 (7th Cir. 2011) (applying Wisconsin law) ; Direct Mortg. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA , 625 F.Supp.2d 1171, 1177-78 (D. Utah 2008) ; RBC Mortg. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh , 349 Ill.App.3d 706, 285 Ill.Dec. 908, 812 N.E.2d 728, 733 (2004).

See also Universal Mortg. Corp. , 651 F.3d at 762 (stating that "when an insured incurs liability to a third party-whether in contract or tort-as a result of employee misconduct, financial loss resulting from that liability is not 'directly' caused by the employee misconduct and therefore is not covered by fidelity bonds containing direct-loss language"); Lynch Props., Inc. v. Potomac Ins. Co. of Ill. , 140 F.3d 622, 629 (5th Cir. 1998) ("Employee dishonesty policies insure against the risk of property loss through employee dishonesty.... Liability policies, by contrast, require an insurer to discharge an obligation of the insured to a third party for some act of the insured or its employee. Although employee dishonesty policies may cover the loss of third-party property in the possession of the insured, ... these policies do not serve as liability insurance to protect employers against tortious acts committed against third-parties by their employees." (internal citations omitted) ); RBC Mortg. Co. , 285 Ill.Dec. 908, 812 N.E.2d at 733 ("If an employee's dishonesty causes losses to a third party, which then leads to litigation concluding in a judgment or settlement, the insured has not incurred a 'direct loss' under a fidelity bond; the insured's loss is 'indirect' and the third party's loss is 'direct.' ").