In the
# United States Court of Appeals
### For the Seventh Circuit

No. 10-3015

UNIVERSAL MORTGAGE CORPORATION,

*Plaintiff-Appellant,*

*v.*

WÜRTTEMBERGISCHE VERSIGHERUNG AG,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-CV-1142—**J.P. Stadtmueller**, *Judge.*

ARGUED FEBRUARY 16, 2011—DECIDED JULY 11, 2011

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Württembergische Versigherung AG ("Württ") is one of several investors (the "Underwriters") in a mortgage bankers blanket bond issued to Universal Mortgage Corporation. As relevant to this case, the bond insures Universal against financial loss resulting from employee misconduct. One of Universal's employees engaged in a scheme by which, for a kickback,

he caused Universal to fund mortgages below its stan-dards. Not knowing the loans were substandard, Universal sold them, warranting that they met its stan-dards. When investors realized the loans were substan-dard, they forced Universal to repurchase the loans, causing Universal a significant financial loss. Universal filed a claim under the bond, asserting that this loss was directly caused by employee dishonesty. The Under-writers denied the claim and this suit followed. The district court dismissed the suit, finding that the bond did not cover Universal's loss.

We affirm. The fidelity bond at issue here employs direct-loss causation language. The bond provides cover-age for losses "directly caused by" dishonest acts of employees. A financial loss resulting from contract liability to third parties is not "directly" caused by em-ployee misconduct, even if employee misconduct is the source of the contract liability. Here, Universal's loss resulted from its contractual repurchase obligations. Although this contract liability arose as a result of an employee's misconduct, the employee misconduct did not directly cause the eventual financial loss associated with the repurchases. In addition, an exclusion in the bond specifically bars coverage for losses resulting from loan-repurchase obligations. Because Universal's loss resulted from its contractual obligation to repurchase real-estate loans, this exclusion applies.

## I. Background

Universal originates mortgage loans and sells them to investors. As part of its sales contract, Universal warrants

that its loans are compliant with Federal National Mortgage Corporation ("FNMC") standards, which forbid the use of down-payment-assistance programs. Universal's warranties require it to repurchase any mortgage sold that does not comply with FNMC standards.

For about a year and a half, Ray Hightower, one of Universal's employees, conspired with an outside mortgage broker to have Universal fund mortgages that did not meet the FNMC down-payment requirements. For a kickback Hightower ensured the loans were approved by Universal despite being noncompliant. Unaware of Hightower's scheme, Universal sold the noncompliant loans to investors, warranting that the loans were compliant. When certain loans went into default, the investors realized the loans did not comply with FNMC standards and exercised their contractual right to force Universal to repurchase the loans. To date, Universal has repurchased some of these loans and is obligated to repurchase others. As a result of the repurchases and outstanding obligations to repurchase, Universal will lose an estimated $4.5 million.

After learning of Hightower's misconduct and the impending financial loss, Universal filed a claim under a mortgage bankers blanket bond issued to it by a consortium of Lloyds of London underwriters that included Württ. In relevant part the bond states: "The Underwriters hereby undertake and agree . . . to indemnify the Assured for . . . [d]irect financial loss sustained by the Assured . . . by reason of and directly caused by . . . dishonest acts by any Employee of the

Assured." In addition, the Bond states at Exclusion 18: "THIS BOND DOES NOT COVER . . . [a]ny loss resulting from the Assured having repurchased or having been required to repurchase a Real Estate Loan from an Investor . . . ."

The Underwriters denied the claim, and Universal brought this suit for breach of contract, statutory interest, and bad-faith denial of an insurance claim. Württ moved to dismiss, arguing that the bond did not cover Universal's loss. The district court granted the motion, holding that Universal's loss was not directly caused by Hightower's fraud but rather by Universal's contractual obligations to investors. Alternatively, the court held that Exclusion 18 barred coverage because Universal's loss resulted from its contractual obligation to repurchase mortgage loans. Accordingly, the court dismissed the claim for breach the contract. Because the statutory-interest and bad-faith claims were dependent on a breach, the court dismissed those claims as well.

## II. Discussion

A bankers blanket bond, sometimes called a fidelity bond or financial institution bond, offers bundled indemnification coverages for various specific risks, typically including financial loss from forgeries, employee dishonesty, and theft. *See* 9A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 5701, at 377-78 (1981 & Supp. 2010). The most common bankers blanket bond is the Standard Form No. 24, which has a

well-chronicled history. *See, e.g., Private Bank & Trust Co. v. Progressive Cas. Ins. Co.*, 409 F.3d 814, 816 (7th Cir. 2005), and sources cited below. Over the last century, nearly every term in the Form 24 bond has been developed in reaction to court interpretations of prior versions of the bond. As a result, certain terms within the bond carry nuanced and well-established meanings. Peter I. Broeman, *An Overview of the Financial Institution Bond, Standard Form No. 24*, 110 BANKING L.J. 439, 445 (1993).

Modern bankers blanket bonds typically limit coverage to losses "directly" caused by covered conduct. *See* Peter Haley, *Loss and Causation*, *in* ANNOTATED FINANCIAL INSTITUTION BOND 99 (Michael Keeley ed., 2d ed. 2004). Although the direct-loss language was clearly adopted to limit coverage, courts today debate its precise effect. *See* Robert J. Duke, *A Brief History of the Financial Institution Bond*, *in* FINANCIAL INSTITUTION BONDS 5-6 (Duncan L. Clore ed., 3d ed. 2008). Two interpretive camps exist: the "proximate cause" camp and the "direct means direct" camp. *Compare Scirex Corp. v. Fed. Ins. Co.*, 313 F.3d 841, 849-50 (3d. Cir. 2002) ("[T]he 'direct cause of a loss' does not have to be the 'sole cause' or 'immediate cause,' but need only be a proximate or substantial cause.") *with Vons Cos., Inc. v. Fed. Ins. Co.*, 212 F.3d 489, 492-93 (9th Cir. 2000) ("We hold that 'direct' means 'direct' and that . . . Vons's policy did not provide indemnity for vicarious liability for tortious acts of its employee."). The primary dispute between the two camps is over whether courts should import tort causation principles when interpreting bankers bonds.

We have previously sided with the direct-means-direct camp, *First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 570 (7th Cir. 2009) (calling the proximate-cause approach "misdirected"), as have scholars, William T. Bogaert & Kerry Evensen, *Loss and Causation Under the Financial Institution Bond*, *in* FINANCIAL INSTITUTION BONDS 596-97 (Duncan L. Clore ed., 3d ed. 2008) ("The phrase 'resulting directly from' is unambiguous and its meaning indicates a stricter standard of causation than mere 'proximate cause.' Unfortunately, the courts have been inconsistent in their enforcement of this contractual language."). More importantly, Wisconsin, whose law governs this case, has placed itself in the direct-means-direct camp. *See Tri City Nat'l Bank v. Fed. Ins. Co.*, 2004 WI App 12, ¶¶ 14-20, 674 N.W.2d 617, 622-24 (Wis. Ct. App. 2003).

For those in the direct-means-direct camp, a loss resulting from an insured's liability to third parties is not a direct loss under a fidelity bond, even if the liability resulted from a covered act. *See* Bogaert & Evensen, *supra* at 594 ("[T]he Bond does not provide coverage for liability to third parties for their losses which may otherwise result from covered conduct, such as the insured's employees' dishonesty."). In *Tri City* the Wisconsin Court of Appeals held that a fidelity bond containing direct-loss language did not cover loss from third-party tort liability, even though the liability resulted from misconduct of the insured's employee. 2004 WI App 12, ¶¶ 17-20, 674 N.W.2d at 623-24. Similarly, and relying on *Tri City*, the Appellate Court of Illinois has held that third-party contract liability is not

a direct loss under a fidelity bond, even when an employee's misconduct caused the warranty breach supporting liability. *RBC Mortg. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 812 N.E.2d 728, 735 (Ill. App. Ct. 2004). *RBC Mortgage* is a logical extension of *Tri City*, and we believe Wisconsin courts would follow its holding if presented with the same question. As these cases show, when an insured incurs liability to a third party—whether in contract or tort—as a result of employee misconduct, financial loss resulting from that liability is not "directly" caused by the employee misconduct and therefore is not covered by fidelity bonds containing direct-loss language.[1]

---

[1] As explained in *Tri City*, liability insurance, as opposed to a fidelity bond, is meant to cover losses from third-party liability: " 'Insurance covers the liability of the insureds to a third-party, while fidelity bonding covers the loss of property owned by the insureds or held by the insureds, as a consequence of employee dishonesty.' " *Tri City Nat'l Bank v. Fed. Ins. Co.*, 2004 WI App 12, ¶ 13, 674 N.W.2d 617, 622 (Wis. Ct. App. 2003) (quoting *Aetna Cas. & Sur. Co. v. Kidder, Peabody & Co.*, 676 N.Y.S.2d 559, 565 (N.Y. App. Div. 1998)); *see also* 9A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 5701, at 380 (Supp. 2010) ("Nor is a bankers' blanket bond a contract in the nature of liability insurance that would indemnify the bank against liability to a third party due to the acts of a bank employee." (citing *Tri City* and *RBC Mortg. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 812 N.E.2d 728 (Ill. App. Ct. 2004))); William T. Bogaert & Kerry Evensen, *Loss and Causation Under the Financial Institution Bond*, *in* FINANCIAL

(continued...)

The particular bond at issue in our case is a mortgage bankers bond, a variation of a bankers blanket bond specifically tailored to institutions that originate and resell mortgage loans. *See* http://www. statesideunderwriting.com/mbb/mortgage_banker_broker_ insurance.html (last visited June 30, 2011). Because bankers blanket bonds have changed over time, we must closely examine the operative language in the bond to ensure the authorities we have cited are applicable. *See First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 977 (7th Cir. 2007). The bond's relevant insuring clause covers loss "directly caused by" employee dishonesty, while the Standard Form No. 24 and the bonds interpreted in *Tri City* and *RBC Mortgage* covered loss "directly resulting from" employee dishonesty. These phrases differ slightly, but the key word in each is "directly," which courts have exhaustively interpreted. We see no meaningful difference between "caused by" and "resulting from" in this context, a conclusion with which the parties appear to agree. Accordingly, consistent with *Tri City* and *RBC Mortgage*, the bond does not cover losses sustained by Universal as a result of third-party contract liability.

In a different twist on the argument, Universal contends that its loss was not caused by its contractual repurchase

---

[1] (...continued)

INSTITUTION BONDS 584 (Duncan L. Clore ed., 3d ed. 2008) ("The Financial Institutional Bond is 'indemnity' insurance, not 'liability' insurance.").

obligations but rather by its initial funding of Hightower's noncompliant loans. An " 'actual depletion of bank funds' " due to employee dishonesty is a direct loss that would be covered under the bond. *First State Bank*, 555 F.3d at 569 (quoting *RBC Mortgage*, 812 N.E.2d at 733); *see* APPLEMAN, *supra* § 5722, at 475 (Supp. 2010) (" '[L]oss resulting directly from' an employee's dishonest act, means an actual depletion of bank funds resulting from the employee's act."). In this sense Universal may have suffered an actual, direct loss when it funded Hightower's noncompliant loans. *See F.D.I.C. v. United Pac. Ins. Co.*, 20 F.3d 1070, 1080 (10th Cir. 1994) ("In terms of loss with respect to the making of loans, a bank suffers a loss when funds are disbursed due to the employee's wrongful conduct." (citing *Portland Fed. Emps. Credit Union v. Cumis Ins. Soc'y, Inc.*, 894 F.2d 1101, 1105 (9th Cir. 1990))). But Universal recouped that loss in full when it resold the noncompliant loans to investors. The loss for which Universal seeks coverage arose later when investors exercised their contractual resale rights.

This conclusion flows from the allegations in Universal's complaint, incorporating attached exhibits, which we take as true when reviewing a motion to dismiss. FED. R. CIV. P. 10(c), 12(b)(6). The complaint itself is unclear regarding the exact source of the loss for which Universal seeks coverage; that is, whether the loss resulted from Universal's contractual repurchase obligations or the initial loan funding. But it states that all loans for which Universal seeks coverage were sold to investors, and that since learning of Hightower's fraud, Universal "has been obliged, pursuant to its con-

tracts with the investors, to repurchase the loans." Attached to the complaint is Universal's Sworn Proof of Loss—the document Universal submitted to the Underwriters in support of its initial claim under the bond. The third page of the proof of loss contains a table identifying the amount of Universal's claimed loss by loan. Universal characterizes its loss amounts as "Repurchased Amount" or "Pending Repurchase Amount." Reading the proof of loss in combination with the complaint, it is inescapable that Universal seeks coverage for the cost of repurchasing loans. Because its obligation to repurchase results from contract liability to the third-party investors, any loss associated with repurchasing costs is not covered by the bond.

In addition, even if we assume Universal's loss to be covered by the bond's insuring clause, Universal's claim is plainly barred by Exclusion 18, which once again states: "THIS BOND DOES NOT COVER . . . [a]ny loss resulting from the Assured having repurchased or having been required to repurchase a Real Estate Loan from an Investor . . . ." Universal does not dispute that within the meaning of Exclusion 18, its mortgage loans are "Real Estate Loans" and the investors forcing Universal to repurchase them are Investors. Nevertheless, Universal claims Exclusion 18 is inapplicable because the real source of its loss was Hightower's misconduct.

In *Continental Corp. v. Aetna Casualty & Surety Co.*, 892 F.2d 540 (7th Cir. 1990), we interpreted a similar exclusion in a fidelity bond. There, a dishonest employee issued false title insurance to fool real-estate investors,

who later sued his employer, a title insurance company, based on the fraudulent policies. The insurance company settled the cases and filed a claim under its fidelity bond, claiming to have suffered a loss as a result of employee dishonesty. The bond excluded "[l]oss or expense resulting from . . . liability of the Insured under contracts or purported contracts of insurance." *Id.* at 542. We held that this exclusion applied: "The underlying cause of Continental's losses is admittedly employee dishonesty. But because the mechanism by which that dishonesty caused loss was through fraudulent title policies and improper title reports, the losses are excluded from coverage by operation of [the exclusion]." *Id.* at 547.

Just as in *Continental*, although the "underlying cause" of Universal's loss was admittedly employee dishonesty, the loss "result[ed] from" Universal's contractual repurchase obligations, bringing it within the terms of Exclusion 18.

AFFIRMED.