# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 6, 2013

No. 12-20527

Lyle W. Cayce
Clerk

BJ SERVICES S.R.L.; WESTERN ATLAS, INC., formerly known as BJ
Services Company, L.L.C.,

Plaintiffs - Appellants,

v.

GREAT AMERICAN INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-2448

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

BJ Services S.R.L. and Western Atlas, Inc. (collectively "BJ Services")
brought an action against Great American Insurance Co. ("Great American"),
seeking a declaration that BJ Services' losses resulting from the dishonest acts
of two of its employees are covered under a policy issued by Great American, as
well as damages for breach of contract. The district court denied BJ Services'
motion for partial summary judgment and granted summary judgment in favor

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-20527

of Great American, holding that BJ Services' losses were not covered because they did not result "directly" from employee dishonesty. Because the district court erred in concluding that it need not decide whether BJ Services owned the assets stolen by the employees, we VACATE the judgment of the district court and REMAND the case for further proceedings.

## BACKGROUND

The following facts appear to be undisputed. Great American issued a policy to BJ Services providing coverage for losses resulting from employee dishonesty. In the policy, Great American agrees to "pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss." "Covered Property" consists of "'money,' 'securities,' and 'property other than money and securities.'" The policy further states that "[t]he property covered under this insurance is limited to property . . . that you own or hold; or . . . for which you are legally liable." The "Covered Cause of Loss" is "employee dishonesty." The policy also contains an exclusion for "[l]oss that is an indirect result of any act or 'occurrence' covered by this insurance including . . . [p]ayment of damages of any type for which you are legally liable," but does not exclude "compensatory damages arising directly from a loss covered under this insurance."

BJ Services seeks coverage under the Great American policy for losses arising from three sets of dishonest transactions entered into by two employees, Jose Limardo and Oscar Luis Parisi. Limardo was a Vice President and Regional Controller for Latin America and Parisi was the Finance Manager and Treasurer; both were long-time employees. In 1979, the BJ Services board of directors issued a resolution that, among other things, granted a power of attorney authorizing Limardo to act jointly with Parisi to "operate in the name and stead of the corporation" with Banco Frances to "apply for credits of all kinds, . . . apply for or receive money as loan, certificates, bonds and other

2

No. 12-20527

negotiable securities, open and close revolving accounts, . . . make, indorse, and accept letters, promissory notes and other negotiable instruments, . . . and carry out all those acts that may be necessary for the good performance of their office." In 1998, BJ Services granted a similar power of attorney allowing Limardo and Parisi to represent BJ Services "before Banks and financial and credit institutions with whom the corporation currently operates or may operate in the future."

**The Banco Frances transactions**: In either 1992 or 1993, Parisi requested that Ruben Saia, the Administrative Manager / Controller of BJ Services, sign paperwork enabling Parisi to open a Banco Frances bank account for BJ Services. Saia had signed similar applications in the past as part of his regular duties, and he approved Parisi's request on this occasion. Limardo and Parisi then opened a Banco Frances account in BJ Services' name and entered into a loan agreement with Banco Frances in BJ Services' name. Although Parisi had the duty to notify BJ Services' accounting department of the Banco Frances account and have account statements sent to BJ Services' corporate address, Parisi did neither. As a result, the account was never included in any corporate accounting by BJ Services. Proceeds from the loan agreement were deposited into the account and subsequently withdrawn by Limardo and Parisi and used for their own purposes. No other BJ Services official knew about the account or the loan agreement. Limardo and Parisi took approximately $5,000,000 from the Banco Frances account, none of which was ever recovered by BJ Services.[1] Limardo and Parisi subsequently admitted that the loans were taken out for Limardo's personal use to resolve his financial problems.

BJ Services discovered the Banco Frances account and loan agreement when Banco Frances debited a different BJ Services account to partially repay

[1] The amount of loss is not at issue in this appeal and appears to be uncertain.

3

the loan. BJ Services then sued Banco Frances for repayment of these debited funds and a declaration that the loan taken out in its name by Limardo and Parisi was invalid. In that case, Banco Frances maintained that Limardo and Parisi acted with actual and apparent authority to enter the loan transactions on behalf of BJ Services. In June 2011, BJ Services agreed to settle the case with a payment of $3,374,908.

**The Drayton transaction**: In September 2001, Limardo and Parisi signed a promissory note on behalf of BJ Services in return for a loan of $152,000 from Drayton, S.A. Limardo and Parisi failed to report the loan to the BJ Services accounting department, and instead used it for their own purposes. BJ Services never recovered the money. Drayton initiated a foreclosure action in Argentina against BJ Services to recover on the promissory note, and BJ Services sued for a declaration that the note was unenforceable. Consistent with Drayton's allegations, the Argentine trial court found the note enforceable because Limardo's and Parisi's power of attorney granted them actual authority to borrow on behalf of BJ Services. This ruling was affirmed on appeal.

**The BGN transaction**: In September 2001, Limardo and Parisi entered into a bond transaction with Banco General de Negocios, S.A. ("BGN") on behalf of BJ Services. Although the details are not exactly clear, it appears that BGN loaned Argentine bonds worth approximately 1,380,968.78 Argentine pesos to BJ Services. Rather than deliver the bonds to BJ Services, Limardo and Parisi used the bonds for their own purposes; BJ Services has never recovered the bonds. BGN initiated a foreclosure action in Argentina based on BJ Services' failure to deliver bonds as required under the loan agreement. BGN argued that Limardo and Parisi acted with actual and apparent authority when they entered into the bond transaction on behalf of BJ Services, and the Argentine trial court ruled in favor of BGN.

No. 12-20527

In March 2011, BJ Services submitted a proof of loss, seeking coverage for its losses arising from the above transactions.  In the proof of loss, BJ Services stated that it "has been held legally liable for loss, or understands, on advice of legal counsel, that it will ultimately be held legally liable for such loss."  BJ Services further stated that it was attempting to reach a settlement in the Banco Frances matter.  In the proof of loss, and at all other times prior to filing the present suit, BJ Services denied that Limardo and Parisi were authorized to enter into any of the above transactions.  Great American denied the claim, stating that "all the money taken in the various schemes belonged to third parties, and not to BJ and would be an indirect loss should BJ lose any of the pending law suits in Argentina."

## PROCEDURAL HISTORY

After Great American denied BJ Services' claim, BJ Services sued Great American in Texas state court.  BJ Services sought a declaratory judgment that the policy covered losses arising from the actions of Limardo and Parisi, as well as damages for breach of contract.  Great American removed the case to federal court and moved for summary judgment.  Great American argued that because "any loss that BJ Services suffered arose out of its liability to the entities whose funds were taken" rather than loss of its own funds, the loss was indirect and therefore not covered.  Alternately, Great American argued that the type of property stolen was not covered.  BJ Services filed a cross-motion for partial summary judgment on the same issues presented in Great American's motion for summary judgment.  BJ Services argued that it owned the funds at the time they were stolen by Limardo and Parisi, and that its losses were therefore directly caused by the theft rather than by liability to third parties.

The district court granted summary judgment in favor of Great American and denied BJ Services' motion.  The district court explained:

5

No. 12-20527

In this case, the losses to BJ Services occurred when the company was required to satisfy its contractual obligations to the financial institutions. Until that point, the losses were suffered only by the financial institutions whose funds were misappropriated. There was no "actual depletion" of BJ Services's bank funds because the Banco Frances account was not included in BJ Services's books and records as an asset of the company. The Drayton funds and the BGN bonds were never deposited into any account in BJ Services's name. Additionally, the amount of the loss would be the amount BJ Services pays to satisfy those contractual obligations, indicating further that the losses to BJ Services resulted directly from the contractual obligations caused by Limardo and Parisi's misconduct, not directly from the employees' misappropriation of the funds they obtained from the banks.

Although the contractual obligations were the result of Limardo and Parisi's misconduct, the employee misconduct itself did not "directly" cause the loss for purposes of the Policy.

The district court also stated that it "need not decide whether the misappropriated funds were 'Covered Property' because its ruling that the loss did not result directly from the employees' misconduct is dispositive." BJ Services filed a motion for reconsideration, which the district court denied. In the order denying reconsideration, the district court stated that "[t]he Court was not required to decide who owned or held the funds because the ruling on whether the loss was direct or indirect was dispositive." BJ Services now appeals.

## DISCUSSION

A district court's grant of summary judgment is reviewed *de novo*. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012) (citations omitted). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citations omitted). We assume, as the parties have assumed, that Texas substantive law governs this dispute.

6

No. 12-20527

The policy makes clear that only a loss resulting directly from employee dishonesty is covered. Only an "actual depletion of [an insured's] funds resulting from the employee's act" constitutes a "direct" loss under an employee dishonesty policy. 9A John Alan Appleman & Jean Appleman, INSURANCE LAW AND PRACTICE § 5722, at 475 (Supp. 2010). On the other hand, "when an insured incurs liability to a third party—whether in contract or tort—as a result of employee misconduct, financial loss resulting from that liability is not 'directly' caused by the employee misconduct and therefore is not covered by fidelity bonds containing direct-loss language." *Universal Mortgage Corp. v. Wurttembergische Versicherung AG*, 651 F.3d 762, 763 (7th Cir. 2011); *see also Vons Cos., Inc. v. Fed. Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000) ("Under the insuring clauses, Vons is covered only for direct losses to Vons caused by its employee's dishonesty, not for vicarious liability for losses suffered by others arising from its employee's tortious conduct.").

The district court found it unnecessary to decide whether BJ Services owned the assets stolen by its employees at the time they were stolen. The district court apparently concluded that even if BJ Services technically owned the assets, their theft caused no "actual depletion" of BJ Services' wealth because the assets were not included in BJ Services' accounting books or (with respect to the BGN and Drayton transactions) deposited into an account in BJ Services' name. Similarly, Great American argues that even if BJ Services owned the assets, it suffered a "theoretical or bookkeeping loss" rather than an actual "out-of-pocket" loss because it never exercised any control over the funds.

We are unaware of any authority holding that funds owned by a company are not "actually depleted" upon being stolen if the company does not exercise a certain degree of control over the funds or include the funds in its accounting books. Furthermore, the cases cited by Great American dealing with "theoretical or bookkeeping loss" are inapposite. These cases establish that "direct loss" does

7

not include a loss of "potential income," *Citizens Bank & Trust Co. v. St. Paul Mercury Ins. Co.*, No. CV305-167, 2007 WL 4973847, at \*5 (S.D. Ga. Sep. 14, 2007), loss of "something [a plaintiff] never actually owned but may have thought [it] owned," *Horowitz v. Am. Int'l Group, Inc.*, No. 09-CV-7312, 2010 WL 3825737, at \*7 (S.D.N.Y. Sep. 30, 2010), or employee actions causing a company to incur liability to third parties. *Universal Mortgage*, 651 F.3d at 762-63. While we agree that such losses are speculative or theoretical, they are easily distinguished from a situation involving theft of assets that a company actually owns.

Accordingly, we disagree with the reasoning of the district court and Great American and instead frame the analysis as follows: Limardo and Parisi entered into transactions with three lenders in BJ Services' name and received assets from the lenders. If Limardo and Parisi received the assets on behalf of BJ Services, then BJ Services received the assets. And if BJ Services received the assets, then Limardo and Parisi took the assets *from BJ Services* when they later misappropriated the assets. Finally, if the assets were taken from BJ Services, this was plainly an "actual depletion" of BJ Services' wealth.

The dispositive question, then, is whether Limardo and Parisi received the assets from the lenders on behalf of BJ Services. BJ Services argues that it received the proceeds of the transactions through its employees because they were granted express authorization to enter into financial transactions in BJ Services' name. Great American appears to concede that if Limardo and Parisi had actual authority to enter into the transactions with the three lenders on behalf of BJ Services, BJ Services would have received or taken possession of the assets through its employees. However, Great American argues that Limardo and Parisi had at most apparent authority, and that "the distinction between apparent and actual authority . . . is dispositive of the issue in this appeal."

More specifically, Great American argues that "BJ Services never exercised any control or possession over the proceeds because the loans were not authorized."

First, we agree with Great American that Limardo and Parisi lacked actual authority to enter into the transactions at issue in this case. Although BJ Services' board of directors did grant Limardo and Parisi extensive powers to act on behalf of the company, the authorization suggests that Limardo and Parisi were allowed to use these powers only to the extent "necessary for the good performance of their office." More importantly, the undisputed evidence shows that from the beginning, Limardo and Parisi intended to enter into the transactions to benefit themselves rather than their employer. Because Limardo and Parisi knew that BJ Services would not want them to enter into the transactions, they lacked actual authority to enter into the transactions on behalf of BJ Services. *See* Restatement (Third) of Agency § 2.01 (2006) ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.");[2] *Remenchik v. Whittington*, 757 S.W.2d 836, 839 (Tex. App.—Houston [14th Dist.] 1988, no writ) ("It is long-standing law in Texas that where an agent binds himself to a course of conduct antagonistic to the interests of his principal, such breach of duty, *ipso facto*, terminates the agency unless condoned by the principal with full knowledge of the facts.").

On the other hand, the distinction between actual and apparent authority does not have the significance suggested by Great American because an apparent agent, acting with only apparent authority, can receive property on

---

[2] The Reporter's Notes to § 2.01 state that there is no intended substantive difference between this definition of "actual authority" and the definition in the Second Restatement of Agency Law, and that "[t]he definition has been expanded to encompass points made in the commentary to Restatement Second, including the focus of actual authority on the agent's understanding at the time the agent acts."

behalf of the principal. If Limardo and Parisi had apparent authority to enter into the transactions on behalf of BJ Services, they created binding contracts between BJ Services and the lenders. *See* Restatement (Third) of Agency § 6.01 ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal . . . the principal and the third party are parties to the contract."). Furthermore, if they acted with apparent authority in accepting the benefit of the contracts (*i.e.* the money and bonds) on behalf of BJ Services, the lenders satisfied their contractual liability to BJ Services. *See* Restatement (Third) of Agency § 6.07 ("A third party's payment to or settlement of accounts with an agent discharges the third party's liability to the principal if the agent acts with actual or apparent authority in accepting the payment or settlement."). The only reasonable conclusion is that, assuming apparent authority existed, BJ Services received the money and bonds when they were accepted by Limardo and Parisi. If BJ Services did not receive the assets, it is difficult to understand how the lenders could have performed their end of the contract.

Our analysis, based on agency principles, is consistent with Texas precedent. In *American Indemnity Co. v. Mexia Independent School District*, 47 S.W.2d 682, 684 (Tex. App.—Waco 1932, writ dism'd), a tax collector for the school district collected taxes allegedly due to the district and misappropriated them. The court held that, regardless of whether the taxes were legally collected in the first place, the tax collector "was the agent of the district in collecting the taxes, and whatever came into his hands as such became the property of the his principal." *Id.* This suggests that even if an agent is acting without actual authority and against the interest of his principal, property accepted by him still becomes the property of the principal.

Great American argues that BJ Services never received the assets because Limardo and Parisi "stole" the funds from the lenders, and "thieves cannot

obtain or convey title to stolen property." *See, e.g.*, *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 508 (Tex. App.—Fort Worth 2012, no pet.) ("[O]ne who purchases stolen property from a thief, no matter how innocently, acquires no title in the property; title remains in the owner."). Despite the characterization of Limardo's and Parisi's actions as "theft" from the lenders, Limardo and Parisi did not obtain the assets in such a way as to prevent them from obtaining title to the assets. Based on the available facts, it appears that the lenders freely gave the assets to Limardo and Parisi to satisfy the lenders' contractual obligations to BJ Services. Of course, Limardo and Parisi falsely represented to the lenders that they were authorized to enter into the transactions on behalf of BJ Services. But this amounts, at most, to fraudulent inducement and does not prevent title from passing to BJ Services. *See Akers v. Scofield*, 167 F.2d 718, 720 (5th Cir. 1948) ("[A] transaction induced by fraudulent representations is not void but voidable, and, in the absence of an election to rescind, title that passed in such a transaction will continue in the recipient."); *Harris v. Archer*, 134 S.W.3d 411, 427 (Tex. App.—Amarillo 2004, pet. denied) ("A contract procured by fraud is merely voidable, unless it is shown to be void for some additional reason.").

## CONCLUSION

In conclusion, we hold that if Limardo and Parisi acted with apparent authority in receiving the assets from the lenders, BJ Services received the assets, and the subsequent misappropriation of the funds caused a direct loss to BJ Services. However, it is not obvious from the evidence in the record whether the issue of the existence of apparent authority may be decided on summary judgment. The district court did not discuss the issue, and we decline to consider it in the first instance on appeal. Accordingly, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

No. 12-20527

We express no opinion on the ultimate issue of coverage or on any of Great American's other defenses to coverage.[3]

---

[3] In particular, we note the discrepancy between BJ Services' present characterization of its loss and its earlier characterization of the loss.  BJ Services now characterizes its loss as assets stolen directly from it by its employees, which would be covered.  However, in the initial proof of loss, BJ Services clearly stated that it was seeking coverage for current and potential contractual liability to third parties, which would not be covered.  Because neither party addresses whether BJ Services is bound to its initial characterization of the loss or cites any relevant authority, we do not consider the issue.  Nothing in our opinion should be interpreted as an implicit holding that BJ Services is not bound by its initial characterization of the loss.