# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2653
_____

Federal Insurance Company

*Plaintiff - Appellee*

v.

Axos Clearing LLC

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: September 23, 2020
Filed: December 7, 2020

_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Federal Insurance Company ("Federal") issued a Financial Institution Bond (the "Bond") to COR Clearing LLC ("COR"), a settlement and clearing firm that allows independent broker-dealers to access public equities markets and place trades

for their customers.[1]  The Bond was issued in April 2014 and April 2015.  In 2016, COR paid $2,080,000 to settle claims by investors that a former COR registered representative, Christopher Cervino ("Cervino"), had conspired with others to defraud investors by carrying out a "pump-and-dump" scheme in a risky penny-stock called VGTel.  COR filed a claim with its liability insurer, a subsidiary of XL Specialty Insurance Company, for VGTel and other settlement payments, which it later settled for $3,625,000 above the policy's deductible.  COR also filed a claim under Federal's Bond to recover its losses for the VGTel settlements.

Federal denied coverage and commenced this action seeking a declaratory judgment that COR's claim is not covered under the Bond's insuring clauses.  COR counterclaimed for breach of contract.  The district court[2] granted summary judgment, declaring that COR's claim for reimbursement under the Bond is not covered and dismissing COR's counterclaim with prejudice.  Fed. Ins. Co. v. COR Clearing, LLC, 328 F. Supp. 3d 956, 963 (D. Neb. 2018).  COR appeals.  Reviewing *de novo* the district court's grant of summary judgment, its interpretation of state law, and its application of state law to insurance coverage disputes, we affirm.  Am. Family Mut. Ins. Co. v. Co Fat Le, 439 F.3d 436, 439 (8th Cir. 2006) (standard of review).

## I. Background

COR hired Cervino in 2013 to serve as a registered representative at COR's Equity Desk in Edison, New Jersey.  His responsibilities were limited to executing trades as directed by clients.  COR began investigating customer complaints

---

[1]For a general description of COR's role in the complex, heavily regulated securities markets, see COR Clearing, LLC v. Calissio Res. Grp., Inc., 918 F.3d 579 (8th Cir. 2019).  COR was acquired by Axos Clearing LLC after this appeal was filed.

[2]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska.

regarding accounts overseen by Cervino in the summer of 2014 and terminated Cervino in October 2014. The VGTel investors filed arbitration complaints with the Financial Industry Regulatory Authority ("FINRA") in late 2014 and April 2015. The larger group[3] alleged that, when COR hired Cervino from an independent broker dealer, he was already engaged in the fraudulent VGTel pump-and-dump scheme with a group of conspirators that included securities fraudster Edward Durante and a crooked financial advisor, Sheik Khan. The conspirators transferred investor accounts to COR where Cervino executed unauthorized VGTel trades. In January 2016, COR submitted a Preliminary Proof of Loss to Federal requesting coverage under the Bond for the VGTel settlements. Also in January 2016, the Securities and Exchange Commission filed an amended criminal complaint against Durante, Cervino, Khan, and others; they were convicted of securities and wire fraud after a sixteen-day jury trial in March 2017.

In the district court, the parties disagreed whether the dispute was governed by New Jersey law, as COR contended, or by Nebraska law, as Federal urged. Before the end of discovery, COR moved for partial summary judgment on this issue. Federal responded by moving for summary judgment on the ground that the Bond did not cover COR's VGTel settlement payments under the four Insuring Clauses at issue. Ruling on these motions (and denying other pending motions as moot), the district court first held that New Jersey had a "more significant relationship" to the Bond dispute and therefore New Jersey law applied in this diversity case under Nebraska choice-of-law principles. Turning to the merits of the Insuring Clauses at issue on appeal, the court held that Insuring Clause 1.B does not apply because, under the leading New Jersey case of Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 854 A.2d 378 (N.J. 2004), COR's loss "did not directly result from Cervino's

---

[3]In the VGTel settlements at issue, COR paid $80,000 to settle claims by investor Helen Cherry ("Cherry") and $2,000,000 to settle claims by twenty-two other investors who the parties refer to as the "Alexen claimants."

actions." Insuring Clause 1.D does not apply because there is no evidence Cervino committed covered dishonest acts. COR appeals those rulings.[4]

On appeal, COR argues the district court properly applied New Jersey law but misapplied Gentilini Ford in concluding that COR is not seeking indemnity for direct losses, as Clause 1.B requires. In appealing the grant of summary judgment dismissing its Clause 1.D counterclaim, COR argues the district court incorrectly held that there was no evidence Cervino's dishonest acts triggered coverage under Clause 1.D. Federal raises three additional issues: (i) the court should have held that Nebraska rather than New Jersey law governs COR's Bond claims; (ii) COR presented insufficient evidence Cervino intended to cause COR to incur losses, as Clauses 1.B and 1.D require; and (iii) COR cannot prove it suffered a loss in excess of the Bond's deductible. The district court concluded the latter two issues presented material fact disputes not appropriate for summary judgment. As we agree with the district court's decision on the issues COR appealed, we decline to consider these additional issues. Regarding the choice of law issue, "[w]here the laws of the two jurisdictions would produce the same result . . . the Court should avoid the choice-of-law question." Ronnoco Coffee, LLC v. Westfeldt Bros., Inc., 939 F.3d 914, 920 (8th Cir. 2019) (quotation omitted).

## II. Analysis

A. Insuring Clause 1.B. Section 1 of the Bond's Insuring Clauses includes four "Dishonesty" coverages. Clause 1.B provides coverage for:

---

[4]The district court also held that Insuring Clause 1.A does not apply because COR's alleged loss arose from trades and therefore must be covered by Clause 1.B, which is an exception to 1.A. The court held that Clause 4, the Forgery or Alteration coverage, does not apply because there is no evidence of forgery or material alteration of covered documents. COR does not appeal those rulings.

Loss resulting directly from dishonest acts of any **Employee**, committed alone or in collusion with others except with a director or trustee of the ASSURED who is not an **Employee**, which arises totally or partially from:
(1) any **Trade**, or
(2) any **Loan**,
provided, however, the ASSURED shall first establish that the loss was directly caused by dishonest acts of any **Employee** which result in improper personal financial gain to such **Employee** and which acts were committed with the intent to cause the ASSURED to sustain such loss.

(Bold terms are defined in the Bond.) The district court concluded that Clause 1.B does not cover the VGTel settlement payments because:

> The only loss COR suffered was payments made to settle claims brought by third parties for their losses. COR did not suffer any risk that its own assets would be directly lost as a result of Cervino's actions.

Fed. Ins. Co., 328 F. Supp. 3d at 961. COR appeals that ruling.

Traditionally, financial institution bonds and similar employee dishonesty coverages were indemnity contracts that covered the insured's direct losses from employee dishonesty (and other risks such as forgery), not the insured's liability to third parties for tortious acts of its employee intended to injure or defraud the third party. As the Seventh Circuit has explained, "[i]nsurance covers the liability of the insureds to a third-party, while fidelity bonding covers the loss of property owned by the insureds or held by the insureds, as a consequence of employee dishonesty." Universal Mortg. Corp. v. Württembergische Versicherung AG, 651 F.3d 759, 762 n.1 (7th Cir. 2011) (quotation omitted); accord RBC Mortg. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 812 N.E.2d 728, 733 (Ill. App. 2004); Vons Cos. v. Fed. Ins. Co., 212 F.3d 489, 491-93 (9th Cir. 2000). Thus, the direct loss provisions in fidelity bonds "do not describe indirect and consequential injuries to the employer resulting

from legal settlements with third parties who were the actual targets of the employee's acts." Aetna Cas. & Sur. Co. v. Kidder, Peabody & Co., 676 N.Y.S.2d 559, 564 (App. Div. 1998).

In most jurisdictions, this type of employee dishonesty provision covers the insured's loss if its employee embezzled customer funds in the insured's possession or control. See Vons, 212 F.3d at 491; First Defiance Fin. Corp. v. Progressive Cas. Ins. Co., 688 F. Supp. 2d 703, 708 (N.D. Ohio 2010). But if the employee embezzled a customer's personal funds not in the employer's possession or control, that is not a covered direct loss even if the employer later reimbursed the customer in a legal judgment or settlement. See Lynch Props. v. Potomac Ins. Co., 140 F.3d 622, 629 (5th Cir. 1998); Kidder, Peabody, 676 N.Y.S.2d at 564. In RBC Dain Rauscher, Inc. v. Fed. Ins. Co., a case involving the same fidelity bond language -- "loss resulting directly from dishonest acts" -- the court explained that, under Minnesota law, "loss of third-party property in [the insured's] possession" is covered, whereas "theft committed against third-parties by its employees" is not. 370 F. Supp. 2d 886, 890 n.3 (D. Minn. 2005), followed in Avon State Bank v. BancInsure, Inc., 787 F.3d 952, 956-57 (8th Cir. 2015).

In construing "direct loss" provisions in various types of insurance policies, including fidelity bonds, state court decisions have frequently divided into "[t]wo interpretive camps . . . the 'proximate cause' camp and the 'direct means direct' camp." Universal Mortg., 651 F.3d at 761. Because state law governs the interpretation of Federal's Bond in this diversity action, the district court looked to Gentilini Ford, the controlling decision of the Supreme Court of New Jersey on this issue. COR argues on appeal, as it did to the district court, that the Court in Gentilini Ford "adopt[ed] the conventional proximate cause test as the correct standard to apply when determining whether a loss resulted from the dishonest acts of an employee," 854 A.2d at 386-87; that the loss suffered by the insured in Gentilini Ford "is not distinguishable from the loss COR suffered"; that "employee dishonesty was a peril

specifically insured against"; *and therefore* that the district court erred in denying coverage under Clause 1.B.

In Gentilini Ford, an automobile dealership allowed its higher risk customers to purchase vehicles on installment contracts, paying a cash deposit and executing a note. Gentilini Ford then assigned its rights in the financed vehicles to a financing company, Auto Lenders, in exchange for a cash payment equivalent to the purchasers' notes. 854 A.2d at 381-82. After a number of customers defaulted on their loans, Auto Lenders discovered that a Gentilini Ford employee had submitted fraudulent credit applications based on falsified pay stubs to overstate the borrowers' creditworthiness. Gentilini Ford settled Auto Lenders' fraud and breach of contract claims for $215,000 and filed a complaint to recover the settlement payment from its insurer under the commercial insurance policy provision covering a direct loss caused by an employee's dishonest acts. Id. at 383. Reversing an appellate decision in favor of the insurer, the Supreme Court of New Jersey adopted "the conventional proximate cause test" for direct losses and ruled that "Gentilini suffered a direct loss of or damage to twenty-seven automobiles when it exchanged those vehicles for installment contracts of an otherwise unacceptable risk." But the Court held that the $215,000 settlement payment was not "an accurate measure of direct loss under the terms" of the policy and remanded, directing that "Gentilini will have the burden of proving its loss on each contract through further proceedings." Id. at 398-99.

While Gentilini Ford adopted the proximate cause test to determine whether an employee's dishonest acts caused the insured's direct loss, we agree with the district court that the direct loss the Court found in Gentilini Ford was the transfer of automobiles for riskier-than-anticipated notes, not the $215,000 settlement payment the insured sued to recover. Therefore, the Court held, "[t]he losses it incurred . . . depend on whether Gentilini still has an interest in those contracts, the amount outstanding on those contracts that have entered default, and Gentilini's ability to mitigate its losses through repossession." Id. at 399. This reasoning demonstrates

-7-

that the Supreme Court of New Jersey applied the principle that direct losses covered by employee dishonesty provisions in financial institution bonds do not include "indirect and consequential injuries to the employer resulting from legal settlements with third parties who were the actual targets of the employee's acts." Kidder, Peabody, 676 N.Y.S.2d at 564. Indeed, in remanding, the Court noted that "Gentilini is not entitled to an award of attorneys' fees incurred in prosecuting its action against [the insurer]" because New Jersey law "does not authorize an award of attorneys' fees to enforce first-party coverage," and "the policy under which Gentilini seeks coverage . . . *does not concern liability to third parties.*" Id. at 399-400 (emphasis added).

For these reasons, we agree with the district court that Gentilini Ford stands for the proposition that, under New Jersey law, COR's payments to settle third-party liability claims based on an employee's dishonest acts directed at the third parties were not a direct loss under Insuring Clause 1.B of the Bond.

B. Insuring Clause 1.D. A separate insuring clause in the Bond's Section 1 Dishonesty provisions, Insuring Clause 1.D, provides coverage for:

Loss of **Customer's Property** resulting directly from the dishonest acts of a **Registered Representative**, committed alone or in collusion with others and which arises totally or partially from the **Registered Representative**;

(1) soliciting such **Property** from the **Customer** when the **Property** has not been in an account with the ASSURED;
(2) instructing or advising the **Customer** to withdraw such **Property** from the **Customer's** account with the ASSURED; or
(3) instructing or advising the **Customer** to liquidate an investment, or terminate an insurance, annuity, futures or other contract,

provided, however, the ASSURED shall first establish that the loss was directly caused by dishonest acts of the **Registered Representative** which result in improper personal financial gain to such **Registered**

-8-

**Representative** or other natural person acting in collusion with such **Registered Representative** and which acts were committed with the intent to cause the **Customer** to sustain such loss.

(Bold terms defined in the Bond). The district court granted summary judgment dismissing COR's counterclaim for coverage of the VGTel settlement payments under Clause 1.D because there was "no evidence that Cervino (1) solicited property, (2) instructed customers to withdraw property from their accounts with COR, or (3) instructed or advised customers to liquidate or terminate anything." Fed. Ins. Co., 328 F. Supp. 3d at 962. In reviewing that ruling, like the district court we view the evidence in the light most favorable to COR, the nonmoving party. See United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).

On appeal, COR argues the court erred in granting summary judgment because a material factual dispute exists regarding these issues. In support, COR cites one document in the limited summary judgment record. In their lengthy Amended Statement of Claim in the FINRA arbitration proceeding, the Alexen claimants alleged that the VGTel conspirators fraudulently opened brokerage accounts for the claimants and executed unauthorized VGTel trades while Cervino was employed by broker Wilson-Davis (also a named respondent). The conspirators later "transferred" Khan's clients to COR Clearing where "without any verbal or written authorization or notification to his clients Mr. Cervino began executing trades to purchase VGTel stock," and "assisted [Durante] in the signing of fraudulent and forged documents on behalf of Claimants that [Cervino] then submitted to COR Clearing."

We doubt that a lawyer's unverified factual allegations in a pleading in a different legal proceeding satisfied the burden on COR in opposing Federal's motion for summary judgment to "show that admissible evidence will be available at trial to establish a genuine issue of material fact." Churchill Bus. Credit, Inc. v. Pac. Mut. Door Co., 49 F.3d 1334, 1337 (8th Cir. 1995) (quotation omitted); see Fed. R. Civ. P.

56(c). Moreover, while the allegations on which COR relies may well accuse Cervino of "dishonest acts," they do not provide evidence that Cervino while employed by COR committed the dishonest acts that trigger coverage under Clause 1.D -- *soliciting* property from a customer that was not in a COR account, *instructing or advising* a customer to withdraw property from the customer's COR account, or *instructing or advising* a customer to liquidate an investment. In its Reply Brief, COR argues that it need not prove Cervino committed the dishonest acts because Clause 1.D covers acts committed "in collusion with others." We reject this untimely contention because, by its plain language, Clause 1.D covers only loss of customer property "resulting directly from the dishonest acts" of Cervino, whether he was acting alone or in collusion with others. Thus, the district court did not err in dismissing COR's Clause 1.D counterclaim because COR failed to show that admissible evidence would be available at trial to prove that Cervino personally committed a covered dishonest act.[5]

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____

---

[5]COR argues at length on appeal that it did not have an adequate opportunity to present additional evidence supporting its Clause 1.D counterclaim because, while Federal's motion for summary judgment encompassed COR's entire counterclaim, Federal did not argue there was no evidence supporting COR's Clause 1.D claim until its reply brief to the district court. But COR's Brief in Opposition recognized that Federal's motion included the Clause 1.D counterclaim, and COR could have requested more time to respond, particularly since the summary judgment cross-motions were filed before the discovery deadline. See Fed. R. Civ. P. 56(d). As COR's initial Brief did not include this procedural issue in the Statement of the Issues presented for review, we need not consider it further. See Fed. R. App. P. 28(a)(5).